IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| R & R PALLET OF GARDEN CITY, INC., a Kansas corporation,<br><br>Plaintiff,<br><br>v.<br><br>AG-TREP 4950 STILWELL PROPERTY OWNER, LLC, a Delaware limited liability company; and TRITEN REAL ESTATE SERVICES, LLC d/b/a TRITEN REAL ESTATE PARTNERS, a Delaware limited liability company,<br><br>Defendant. | ) | Case No. |

**COMPLAINT**

Plaintiff R & R Pallet of Garden City, Inc. ("Plaintiff") brings this action against Defendants, AG-TREP 4950 Stilwell Property Owner, LLC ("AG-TREP 4950") and Triten Real Estate Services, LLC d/b/a Triten Real Estate Partner ("Triten") (collectively "Defendants"), and for its causes of action alleges and states as follows:

## I. INTRODUCTION

1. This action arises from a commercial landlord's improper and unauthorized seizure of a tenant's bank letter of credit ("LOC") following the orderly conclusion of a three-year lease term.

2. Upon the expiration of the lease, Plaintiff fully vacated the premises and paid all undisputed operational and maintenance adjustments. To ensure complete compliance with its surrender obligations, Plaintiff facilitated a joint physical walkthrough with the landlord's authorized on-site representative. During that inspection, the representative explicitly reviewed the

property and verified that the debris removal was fully satisfactory. Relying in good faith upon that formal clearance, Plaintiff turned over the keys and vacated the premises.

3. Rather than returning or releasing the tenant's LOC, the landlord reversed their position weeks after the walkthrough. After two weeks of silence, Triten suddenly issued a wholly un-itemized and baseless invoice for $200,000.00. This charge was attributed to an outside contractor's "dirt removal" and alleged property encroachment – an expense that falls entirely outside the lease's strict definition of "debris" and stems from a physical condition that pre-dated the lease.

4. Using this unsubstantiated invoice as a pretext, and actively directed and encouraged by Triten, the landlord executed a draw demand upon the full $1,000,000.00 balance of Plaintiff's LOC. Strikingly, Defendants' own legal counsel admitted in writing that they were unable to identify or substantiate any actual damages matching this sum. Defendants' counsel explicitly confirmed that they were pulling the entire $1,000,000.00 first and would only "address these issues once we remove the Debris and reimburse ourselves," openly acknowledging their intent to take the money now and try to justify the expense later.

5. A commercial security instrument is strictly limited by the text of the contract and may not be treated as a non-consensual liquid fund to be seized while a landlord attempts to reverse-engineer a justification for its retention. Plaintiff brings this action to remedy this unlawful conversion of funds, recover its liquid capital with interest, and enforce the mandatory fee-shifting and indemnification provisions triggered by Defendants' unlawful actions and the material breaches of the lease agreement.

## II. PARTIES

6. Plaintiff is a Kansas corporation with its principal place of business located at 2008 W. Mary, Garden City, Kansas 67846. Plaintiff is a citizen of the State of Kansas.

7. Defendant AG-TREP 4950 is a Delaware limited liability company registered and authorized to conduct business in the State of Missouri. AG-TREP 4950's principal office address is 245 Park Avenue, 26th Floor, New York, New York 10167. For purposes of federal diversity jurisdiction, the citizenship of a limited liability company is determined by tracing the citizenship of each layer of its underlying members. The sole member of AG-TREP 4950 is AG-TREP ISF Portfolio Parent III, LP, a Delaware limited partnership. The general partner of AG-TREP ISF Portfolio Parent III, LP is AG Real Estate Manager, Inc., a Delaware corporation with its principal place of business in New York. Upon information and belief, none of the partners, members, or underlying beneficial owners in this corporate chain are citizens of the State of Kansas. Accordingly, Defendant AG-TREP 4950 is a citizen of Delaware and New York.

8. Defendant Triten is a Delaware limited liability company with its principal office address located at 3657 Briarpark Drive, Suite 300, Houston, Texas 77042. Upon information and belief, none of the underlying members or managers of Triten are citizens of the State of Kansas. Accordingly, Triten is a citizen of Delaware and Texas.

9. Defendant AG-TREP 4950 is the successor owner of the industrial commercial tract located at 4950 Stilwell Street, Kansas City, Missouri 64120 (the "Premises"). Defendant Triten acts as the third-party property management company and operational billing agent for AG-TREP 4950 at the Premises.

## III. JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between Plaintiff (Kansas) and Defendants (Delaware, New York, and Texas), and the amount in controversy exceeds $75,000.00, exclusive of interest, fees, and costs.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events, omissions, and tortious conduct giving rise to the claims occurred in Jackson County, Missouri, within the Western District of Missouri, and the commercial real property that is the subject of this dispute is physically located in this district.

## IV. FACTS COMMON TO ALL CLAIMS

### *The Lease and Security Infrastructure*

12. On or about April 23, 2023, Plaintiff entered into a 36-month commercial Lease Agreement (the "Lease") to occupy the industrial warehouse site at 4950 Stilwell Street, Kansas City, Missouri. A copy of the Lease is attached hereto as Exhibit A.

13. Defendant AG-TREP 4950 subsequently acquired the real property and succeeded to all rights, duties, and obligations as landlord under the Lease. Defendant Triten assumed direct property management, operational control, and ledger administration over the site on behalf of AG-TREP 4950.

14. To secure specific surrender obligations outlined in Section 19 of the Lease, Plaintiff delivered an irrevocable LOC issued by Dream First Bank, N.A. ("DFB").

15. On May 25, 2023, the parties to the Lease executed a First Amendment to Lease Agreement, wholly deleting and replacing Section 58. Under amended Section 58(a), the LOC was specifically restricted to securing the tenant's unique obligation to remove contractually defined

"Debris" upon expiration of the tenancy. A copy of the First Amendment to Lease Agreement is attached hereto as Exhibit B.

16. On February 13, 2026, the LOC was modified via a written bank agreement to extend its maturity date to May 30, 2026 to cover the final wind-down period of the tenancy.

***Strict Contractual Definitions Excluding "Dirt"***

17. Section 19(a) of the Lease explicitly defines "Debris" as "scrap metals, wood scraps, waste products, and other refuse and trash (collectively, the 'Debris,' which the parties hereby agree for the purposes of this Lease shall include all of Tenant's pallets [whether new, used, broken or destroyed], and/or any component parts thereof.)."

18. Conspicuously and contractually absent from this definition is "dirt," "soil," or natural topographies. Furthermore, the grading and soil placement on the property pre-dated the Lease.

***Complete Performance, Walkthrough, and Express Waiver***

19. The Lease term officially expired, and Plaintiff fully vacated the Premises on April 30, 2026.

20. Prior to finalizing its move-out, Plaintiff facilitated a joint physical walkthrough of the property with Defendants' authorized on-site representative.

21. During this joint inspection, the representative explicitly verified and confirmed that all debris removal was wholly satisfactory and compliant with lease surrender conditions.

22. Plaintiff completed its move-out, turned over the physical keys, and closed its operations in direct reliance on the express confirmation and clearance delivered by Defendants' agent.

23. For more than two weeks following the walkthrough and surrender date, Defendants remained completely silent, raising no operational issues, delivering no punch lists, and issuing no retractions of their representative's approval.

***The $200,000 Invoice and Seizure Maneuver***

24. In mid-May 2026, long after physical surrender was completed, Triten abruptly issued a wholly un-itemized and baseless invoice numbered 4950-765, dated May 1, 2026, charging Plaintiff $200,000.00 for an alleged "encroachment on neighboring tenant's space" and referencing generic "dirt removal" by an outside contractor ("Mainline Services"). A copy of the invoice is attached hereto as Exhibit C.

25. The invoice provided no standard commercial breakdowns, omitting truck logs, USDOT haul numbers, weight metrics, or landfill dump receipts.

26. On May 21, 2026, AG-TREP 4950, actively encouraged, assisted, and directed by Triten, officially bypassed Plaintiff and submitted an immediate draw demand to DFB for the full $1,000,000.00 balance of the LOC, asserting an uncured default for a "failure to remove Debris."

27. In written correspondence dated May 22, 2026, Defendants' legal counsel claimed that the $200,000.00 invoice was historically distinct from the active LOC draw request, and openly acknowledged that Defendants were "still evaluating what other losses or compensation we're incurring" and intended to look into those issues only after they secured the cash and completed their own property adjustments.

28. On Sunday, May 24, 2026, Defendants' counsel sent highly out-of-context photographs depicting loose organic topsoil and weathered yard elements in an attempt to create a retroactive default cover story, which directly contradicts Plaintiff's continuous, contemporaneous video baseline recorded on the exact day of the authorized walkthrough.

29. Plaintiff delivered an express, written response to Defendants giving them until 12:00 p.m. on Tuesday, May 26, 2026 to stand down from this unauthorized draw or provide definitive substantiation for the funds. Defendants failed or refused to stand down.

30. On or about Wednesday, May 27, 2026, Defendants executed and finalized the draw, transferring $1,000,000.00 out of Plaintiff's banking lines and converting the cash directly into their own corporate control.

**COUNT 1 – DECLARATORY JUDGMENT**
**(against Defendant AG-TREP 4950 only)**

31. Plaintiff incorporates by reference, as if set forth fully herein, paragraphs 1 through 30 of this Complaint.

32. An active, justiciable, and concrete controversy exists between Plaintiff and Defendant AG-TREP 4950 concerning the parties' respective rights, duties, and financial obligations under the Lease and the First Amendment.

33. Under Section 58(a) of the Lease, as amended, AG-TREP 4950's right to draw upon and apply the proceeds of the LOC is strictly conditioned on a tenant default for failing to remove "Debris," with the scope of permitted out-of-pocket spending limited to actual, substantiated debris removal costs.

34. Section 58(a)(iii) further provides that if the LOC draws are held during an active dispute, the landlord's use of those funds is restricted, and any unspent or unsubstantiated balances must be returned to Plaintiff with interest.

35. Defendants contend that AG-TREP 4950 is entitled to unrestrictedly hold and spend the entire $1,000,000.00 cash balance to satisfy an un-itemized $200,000.00 excavation billing dispute and other unliquidated, unproven, and non-debris property assessments.

36. Plaintiff contends that:

a. Dirt, topsoil, and earth moving are explicitly excluded from the lease definition of "Debris" under Section 19(a) of the Lease;

b. Defendant AG-TREP 4950 waived the right to claim a surrender default by virtue of its agent's verbal walkthrough clearance; and

c. $800,000.00 of the total drawn funds has no contractually documented or billed relationship to any lease event whatsoever.

37. Accordingly, Plaintiff requests a judicial declaration and decree under 28 U.S.C. § 2201 establishing that:

a. Plaintiff fully and satisfactorily performed its surrender obligations under the Lease;

b. The $200,000.00 un-itemized excavation charge involves matters outside the contractual scope of "Debris"; and

c. Defendant AG-TREP 4950 has no legal entitlement to retain or utilize the $1,000,000.00 cash proceeds and must immediately return the full amount to Plaintiff with interest.

**COUNT 2 – CONVERSION**
**(against All Defendants)**

38. Plaintiff incorporates by reference, as if set forth fully herein, paragraphs 1 through 37 of this Complaint.

39. Plaintiff had a distinct, vested property right and ownership interest in the $1,000,000.00 in liquid financial funds held as security under the credit lines at DFB.

40. Defendants, acting in concert, intentionally, wrongfully, and permanently seized dominion and control over Plaintiff's $1,000,000.00 in cash by deploying an inaccurate declaration of default and utilizing a compromised bank draw procedure.

41. Defendant Triten actively participated in, encouraged, and executed this conversion by fabricating the unsubstantiated $200,000.00 “dirt” invoice, managing the ledger to record a false default, and coordinating the operational mechanics of the wrongful bank draw.

42. The Lease and Plaintiff’s tenancy thereunder fully expired and terminated on April 30, 2026. Defendants’ subsequent draw, possession, and exercise of ownership over the $1,000,000.00 cash proceeds thereafter took place completely outside the lifespan of the tenancy and independent of active lease operations, constituting an independent, post-termination tort.

43. Defendants’ seizure of the cash was unauthorized and tortious, as dirt removal is explicitly outside the lease definition of “Debris” and $800,000.00 of the total $1,000,000.00 draw has zero documented or billed nexus to any active lease transaction whatsoever.

44. Defendants acted with deliberate disregard for the contractual baseline, acknowledging in writing that they were taking the funds as an unliquidated fund while unable to present or document actual matching damages.

45. Plaintiff demanded in writing that Defendants not draw funds on the LOC, but Defendants refused to comply. Plaintiff is entitled to the immediate return of the $1,000,000.00, actual damages, interest, and punitive damages for Defendants’ intentional tortious conduct.

**COUNT 3 – TORTIOUS INTERFERENCE WITH EXISTING CONTRACT**
**(in the alternative to Count 2 as to Defendant Triten only)**

46. Plaintiff incorporates by reference, as if set forth fully herein, paragraphs 1 through 45 of this Complaint.

47. A valid commercial Lease existed between Plaintiff and Defendant AG-TREP 4950.

48. Defendant Triten had knowledge of this Lease and the specific restrictive draw amendments governing the LOC under Section 58(a) of the Lease.

49. Defendant Triten intentionally, without justification or excuse, interfered with the Lease by inducing, encouraging, and directing Defendant AG-TREP 4950 to materially breach the Lease.

50. Triten accomplished this interference by manufacturing a fraudulent $200,000.00 billing pretext, manipulating corporate accounting records, and encouraging Defendant AG-TREP 4950 to disregard their agent's physical walkthrough clearance to execute an illegal $1,000,000.00 bank draw.

51. As a direct and proximate result of Triten's intentional and unjustified interference, Defendant AG-TREP 4950 materially breached the Lease, causing Plaintiff to suffer direct out-of-pocket damages in the amount of $1,000,000.00.

**COUNT 4 – BREACH OF CONTRACT**
**(in the alternative to Count 2 as to Defendant AG-TREP 4950 only)**

52. Plaintiff incorporates by reference, as if set forth fully herein, paragraphs 1 through 51 of this Complaint.

53. At all times relevant to its expiration on April 30, 2026, the Lease, as amended, was a valid and legally binding contract between Plaintiff and Defendant AG-TREP 4950.. Plaintiff fully performed all covenants, rental payments, and pro-rated operational expense adjustments required of it under the agreement.

54. Defendant AG-TREP 4950 materially breached Section 19 and Section 58 of the Lease by demanding extra-contractual remedies for natural earth variations that are explicitly excluded from the definition of "Debris," and by failing to honor their agent's conclusive walkthrough verification.

55. Defendant AG-TREP 4950 further breached the explicit draw provisions of Section 58(a) by failing to restrict their draw to actual, substantiated out-of-pocket debris removal costs.

56. As a direct and proximate result of Defendant AG-TREP 4950's breaches, Plaintiff has suffered out-of-pocket direct damages in the amount of $1,000,000, alongside compounding interest and administrative costs, including reasonable attorneys' fees.

**COUNT 5 – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (against Defendant AG-TREP 4950 only)**

57. Plaintiff incorporates by reference, as if set forth fully herein, paragraphs 1 through 56 of this Complaint.

58. Under Missouri law, every commercial contract contains an implied covenant of good faith and fair dealing, prohibiting a party from exercising contract judgment deceptively to destroy the reasonable expectations of the counterparty.

59. Defendant AG-TREP 4950 violated this covenant by:

a. Deploying an on-site agent to greenlight a move-out walkthrough to induce the tenant to surrender possession without notice of dispute;

b. Intentionally withholding photographic claims for weeks until Plaintiff completely surrendered physical control of the site;

c. Endorsing an un-itemized, arbitrary, and baseless $200,000.00 invoice as a tactical device to create an alleged default; and

d. Utilizing a protective security instrument as a non-consensual liquid fund to achieve an unfair commercial advantage while failing to verify actual alleged default damages.

60. Defendant AG-TREP 4950's bad faith behavior has directly damaged Plaintiff in the amount of $1,000,000, plus accruing interest, costs, and reasonable attorneys' fees.

**COUNT 6 – UNJUST ENRICHMENT**
**(Alternative, against All Defendants)**

61. Plaintiff incorporates by reference, as if set forth fully herein, paragraphs 1 through 60 of this Complaint.

62. By drawing upon Plaintiff's LOC, Defendants received, appreciated, and now physically hold a cash benefit totaling $1,000,000.00.

63. This $1,000,000.00 belongs to Plaintiff, which was surrendered only under the narrow constraints of the security provision in the Lease that is now expired.

64. Defendants have no legitimate contract, tort, or equitable justification to hold or utilize the $800,000.00 that was completely unbilled, un-invoiced, and independent of any active commercial transaction.

65. Defendants have no equitable or contractual basis to retain the other $200,000.00, given that the underlying "dirt removal" charge falls completely outside the scope of tenant liability and was previously waived by Defendants' walkthrough agent.

66. Defendants have refused to return the funds, and their non-consensual retention of Plaintiff's cash has resulted in a substantial windfall that unjustly enriches Defendants at Plaintiff's direct expense.

67. Under principles of equity and good conscience, Defendants must not be permitted to retain this cash, and Plaintiff is entitled to restitution in the full amount of $1,000,000.00, plus interest.

WHEREFORE, Plaintiff R & R Pallet of Garden City, Inc. respectfully requests that this Court enter judgment in its favor and against Defendants AG-TREP 4950 Stilwell Street Property Owner, LLC and Triten Real Estate Services, LLC, jointly and severally, granting the following relief:

A. An award of actual and compensatory damages in the amount of $1,000,000.00, plus pre-judgment and post-judgment interest at the maximum legal rate;

B. A decree that Plaintiff is in full compliance with the Lease, as amended, that dirt is excluded from the debris removal liabilities, and ordering the immediate return of the LOC proceeds;

C. An award of punitive damages under Counts 2 (Conversion) and 3 (Tortious Interference with Contract) due to Defendants' intentional and willful corporate misconduct;

D. An order directing Defendants to pay all of Plaintiffs' reasonable attorneys' fees and litigation costs and expenses pursuant to Section 13 (Landlord Indemnity for Breach) and Section 25 (Fee-Shifting Mandate) of the Lease, as amended; and

E. Such other, further, or alternative relief as this Court deems equitable, just, and proper under the circumstances.

Respectfully submitted,

MORRIS LAING LAW FIRM

By /s/ Ryan M. Peck

Ryan M. Peck, #KS000800
Will B. Wohlford, #KS000875
300 N. Mead, Suite 200
Wichita, KS 67202
Main: (316) 262-2671
Fax: (316) 262-6226
rpeck@morrislaing.com
wwohlford@morrislaing.com
*Attorneys for Plaintiff*