# EXHIBIT A

# LEASE AGREEMENT

**THIS LEASE AGREEMENT** (the "***Lease***") is made and entered into as of the Lease Execution Date (defined below), by and between **EHBCO, L.L.C.**, a Missouri limited liability company, ("***Landlord***") and **R&R PALLET OF GARDEN CITY INC.**, a Kansas corporation *d/b/a* R&R Pallets ("***Tenant***").

1. **Definitions and Basic Provisions**. The definitions and basic provisions set forth below are incorporated herein by reference for all purposes:

**Lease Execution Date:** April 23, 2023. Landlord and Tenant intend that each shall have vested rights immediately upon the signing of this Lease by both parties and that this Lease shall be fully binding and in full force from and after the date hereof.

**Commencement Date:** The Lease Execution Date

**Tenant Address:** The Premises (defined below)

and also

2008 W. Mary
Garden City, Kansas 67846

**Landlord Address:** 11517 Newton Street
Overland Park, Kansas 66210
Attn: Nancy Lang

**Land:** The tract of land situated in Jackson County, Kansas with a municipal address of 4950-80 Stilwell Street, Kansas City, Missouri 64120, consisting of approximately 13.39 acres of total land (the "***Total Acreage***"), as described on Exhibit "A" (the "***Land***"). Of the Total Acreage, approximately 12.59 acres are usable (the "***Useable Acreage***").

**The Premises:** Approximately 6.70 acres of Land (the "***Premises Acreage***"), as shown on Exhibit "B", together with the building and other improvements located thereon (collectively, the "***Premises***").

**Term:** **Thirty-six (36) months**, commencing on the Commencement Date and ending 36 calendar months thereafter (the "***Expiration Date***"). If the Commencement Date is not the first day of a calendar month, then the Term shall be extended by the number of days between the Commencement Date and the end of the month in which the Commencement Date occurs.

**Base Rental:** See Exhibit "C". Tenant shall pay Base Rental in advance and without demand or offset starting on the Commencement Date and thereafter on the first day of each subsequent calendar month throughout the Term until the Expiration Date. If the Commencement Date is a date other than the first (1st) day of a calendar month, then Tenant shall be required to pay only a pro rata share of Base Rental due for such partial month.

| | |
|---|---|
| **Initial Estimated Additional Charges:** | The initial estimate of monthly escrow of Tenant's applicable Proportionate Share of Additional Charges (defined below) is $3,209. That amount is subject to change by Landlord following the Lease Execution Date and based on actual expenses as outlined below. |
| **Proportionate Share:** | 50.04%, which is the percentage obtained by dividing (i) the Premises Acreage, by (ii) the Total Acreage. |
| **Security Deposit:** | $36,096.90. |
| **Prepaid Rent:** | N/A. |
| **Sole Permitted Use:** | Pallet production and distribution facility, which shall be used in compliance with the terms and provisions of this Lease and all Laws (defined herein).<br><br>**The following uses are expressly prohibited on the Premises: (i) the storage of Hazardous Materials, (ii) storage of abandoned or damaged vehicles; (iii) any junkyard, dumping, disposing, incineration or reduction of garbage; (iii) an automobile body and fender shop, or an automobile repair shop (mechanical or otherwise); (iv) billboards or other advertising for off-Premises use; (v) any use which emits or results in a strong, unusual or obnoxious odor, noise, or sound, or which emits offensive fumes, dust, or vapors, and (vi) any use prohibited by applicable Laws.** |
| **Guarantor:** | Rodney A. Wadel |
| **Tenant's Broker:** | None |
| **Effect of T & E Service Co Inc:** | T & E Service Co Inc ("***T&E***") is a tenant of Landlord and currently occupies approximately one-half of the building depicted on Exhibit B and occupies or makes use of certain drives, parking areas, and other portions of the Land that constitute the Premises under this Lease. T&E has committed to vacating the building and other portions of the Premises no later than May 31, 2023. Accordingly, notwithstanding any provisions of this this Lease to the contrary: (a) this Lease shall not commence with respect to the portion of the building currently occupied by T & E until June 1, 2023; (b) Tenant shall not interfere with T&E's occupancy or use of the building, drives, parking areas or other exterior portions of the Premises or Land prior to June 1, 2023; (c) Tenant shall not owe Rent or Additional Charges for any portion of April 2023; (d) Tenant shall not owe Additional Charges for May 2023; and (e) Rent for May 2023 shall be adjusted to Twelve Thousand Dollars and No Cents ($12,000). Commencing June 1, 2023, this Lease shall commence with respect to the entire Premises and Tenant shall owe full Rent and Additional Charges as provided herein. Except as explicitly modified in this paragraph, the provisions of this Lease are unaffected and in full force and effect. |

**2.** <u>Lease of Premises</u>. In consideration of the obligation of Tenant to pay Rent (defined below) as herein provided and in consideration of the other terms, covenants, and conditions hereof, Landlord demises and leases to Tenant, and Tenant leases and takes from Landlord, the Premises, for the Term, all upon and subject to the terms and conditions set forth herein. Landlord shall deliver the Premises to Tenant, and Tenant shall accept the Premises from Landlord on the Commencement Date (the "***Delivery Date***").

3. **Services and Utilities**. If the Premises' utilities are separately metered, Tenant shall pay directly to the service provider the costs of all utilities and services supplied to the Premises, together with any taxes thereon. To the extent the Premises are not separately metered, the cost of such utilities and services shall be included as part of Additional Charges. Failure to any extent to furnish or any stoppage of said utilities and services resulting from any cause shall not render Landlord liable for any damages to either person, property or business, nor be construed as an eviction of Tenant, nor entitle Tenant to any abatement of Rent or relieve Tenant from fulfillment of any covenant or agreement contained herein.

4. **Use of Premises; Signage**. Tenant shall maintain the Premises in a clean, orderly, and sanitary condition at all times during the Term. Tenant will not occupy or use any portion of the Premises for any purpose other than the Sole Permitted Use. Tenant's use of the Premises will be consistent with the uses it conducts at its other locations and properties as of the date hereof. All of Tenant's signage on the Premises is at Tenant's sole cost including, but not limited to, installation, maintenance, and removal thereof, and is subject to the prior written approval of Landlord, which shall not be unreasonably withheld, and compliance with all Laws.

5. **Additional Charges**.

a. During the Term Tenant shall pay to Landlord, as the "***Additional Charges***", Tenant's applicable Proportionate Share of the following: (i) all costs and expenses incurred or accrued for all Taxes (defined below) applicable to the Land, and any portion thereof, specifically excluding the personal property taxes levied upon Tenant's trailers, equipment, machinery, trade fixtures, inventory (excluding all Debris as defined herein), storage, and all other personal property of Tenant (together, "***Tenant's Personalty***") which shall be Tenant's responsibility as set forth in Section 41 herein, and (ii) all costs and expenses incurred or accrued in each calendar year in connection with the ownership, operation, maintenance, management, repair and protection of the Land, including all impositions, insurance premiums and deductibles (including but not limited to those costs specifically enumerated in Section 31(c) below), operating charges, management and administrative fees, maintenance charges, construction costs, and any other charges, costs and expenses which may arise under any provision of this Lease. The term "***Taxes***" includes real estate taxes, franchise or margin taxes, assessments, excises, association dues, fees, levies, charges, and other taxes of every kind and nature whatsoever, general and special, extraordinary and ordinary, foreseen and unforeseen, including interest on installment payments, which may be levied or assessed against or arise in connection with ownership, use, occupancy, rental, leasing, operation or possession of the Land and any improvements thereon, or paid as rent under any ground lease. Taxes shall also include the costs and expenses incurred by Landlord to contest, review or negotiate any tax or assessment applicable to the Land.

b. Landlord shall deliver to Tenant, approximately forty-five (45) days prior to the expiration of each calendar year, a written estimate of Additional Charges for the upcoming calendar year and an estimate of Tenant's share thereof. The initial monthly estimates are set forth above and Landlord makes no guaranty or warranty that such estimates will be accurate. Tenant shall pay such estimated amount in advance in equal monthly installments together with payments of Rent. Within ninety (90) days after the end of each calendar year, Landlord shall deliver to Tenant a statement, together with supporting invoices and other materials, setting forth the actual Additional Charges paid by Landlord. The parties, within thirty (30) days thereafter, shall make payment to each other, as necessary. For purposes of calculating Tenant's applicable Proportionate Share of Additional Charges, a year shall mean a calendar year except the first year, which shall begin on the Commencement Date, and the last year, which shall end on the Expiration Date. Landlord may equitably increase Tenant's Proportionate Share for any item of expense or cost reimbursable by Tenant that relates to a repair, replacement, or service that benefits only the Premises or only a portion of the Land or the Premises that includes the Premises or that varies with occupancy or use. This Section 5 shall survive the termination or earlier expiration of the Lease.

6. **Payments and Performance**. Time is of the essence in the performance of all of Tenant's and Landlord's obligations under this Lease. Base Rental, Tenant's Additional Charges, and any amount which becomes owing by Tenant to Landlord hereunder are collectively referred to in the Lease as "***Rent***" and shall bear interest at the highest lawful rate per annum from the due date until paid, or at a rate of six percent (6%) over the prime rate of interest published in the Wall Street Journal at the time unpaid Rent, (whichever is lower) from the due date until paid. In addition, at Landlord's option, but only to the extent allowed by applicable Law and not in excess of the amount allowed by applicable Law, Tenant shall pay a late charge in the amount (as solely determined by Landlord) of up to 10% of any installment of Rent hereunder that is not paid within five (5) business days of the date on which it is due to compensate Landlord for the additional expense involved in handling delinquent payments and loss of use of such Rent.

7. **Condition of the Premises**. By accepting the Premises on the Delivery Date, Tenant shall be deemed to have accepted the same "As Is, Where Is and With All Faults" and to have acknowledged that the same comply fully with Landlord's covenants and obligations hereunder. **EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN AND WITHOUT LIMITING THE GENERALITY OF THE TERMS AND PROVISIONS OF THE LEASE, TENANT FURTHER ACKNOWLEDGES THAT NEITHER LANDLORD NOR ANY AGENT OR REPRESENTATIVE OF LANDLORD HAS MADE ANY REPRESENTATION, WARRANTY, ASSURANCE OR COVENANT AS TO, AND TENANT EXPRESSLY DISCLAIMS ANY WARRANTY AS TO, THE CONDITION (INCLUDING, BUT NOT LIMITED TO, THE PHYSICAL CHARACTERISTICS) OF THE PREMISES AND THE LAND AND: (A) THE FITNESS OR SUITABILITY OF THE PREMISES OR THE LAND FOR ANY PURPOSE INCLUDING, BUT NOT LIMITED TO, TENANT'S INTENDED COMMERCIAL PURPOSE, AND (B) THE COMPLIANCE OF OR BY THE PREMISES OR THE LAND OR THEIR OPERATION WITH ANY LAWS. TENANT REPRESENTS AND WARRANTS TO LANDLORD THAT TENANT HAS CONDUCTED ALL SUCH INVESTIGATIONS AS ARE NECESSARY OR APPROPRIATE TO CONFIRM THE ACCEPTABILITY OF THE PHYSICAL CONDITION AND CHARACTERISTICS, THE SIZE AND DIMENSIONS, AND THE SUITABILITY OF THE PREMISES AND THE LAND FOR TENANT'S INTENDED USE, AND THAT TENANT IS NOT RELYING UPON OR OTHERWISE BASING ITS DECISION TO LEASE THE PREMISES AND THE LAND ON ANY REPRESENTATIONS OR WARRANTIES AS TO SUCH MATTERS MADE BY OR ON BEHALF OF LANDLORD. TENANT ACCEPTS THE PREMISES AND THE LAND IN THEIR "AS IS" CONDITION. ALL PROPERTY OF TENANT OR ANY OTHER PARTY, LOCATED IN THE PREMISES, AND THE LAND, IS AT THE RISK OF TENANT AND NEITHER LANDLORD NOR LANDLORD'S AGENTS, EMPLOYEES, REPRESENTATIVES OR AFFILIATES SHALL BE LIABLE FOR ANY LOSS, DAMAGE, OR THEFT THEREOF. LANDLORD'S DUTIES AND WARRANTIES ARE LIMITED TO THOSE SET FORTH IN THE LEASE, AND SHALL NOT INCLUDE ANY IMPLIED DUTIES OR WARRANTIES, ALL OF WHICH ARE HEREBY DISCLAIMED BY LANDLORD AND WAIVED BY TENANT. TENANT'S OBLIGATION TO PAY RENT HEREUNDER IS NOT DEPENDENT UPON THE CONDITION OF THE PREMISES OR THE LAND OR THE PERFORMANCE BY LANDLORD OF ITS OBLIGATIONS HEREUNDER, AND, EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN, TENANT SHALL CONTINUE TO PAY RENT, WITHOUT ABATEMENT, SETOFF OR DEDUCTION, NOTWITHSTANDING ANY BREACH BY LANDLORD OF ITS DUTIES OR OBLIGATIONS HEREUNDER, WHETHER EXPRESS OR IMPLIED. TENANT WAIVES ANY STATUTORY LIENS OR RIGHTS IT MAY HAVE UNDER MISSOURI LAW TO TERMINATE THIS LEASE BASED ON ANY ALLEGED BREACH Of ANY EXPRESS OR IMPLIED WARRANTIES.**

8. **Repairs**. Tenant shall, at Tenant's expense, repair, replace and maintain in good condition all portions of the Premises and any improvements located thereon, including, without limitation, any concrete paving, gravel, gates, key pads, storage tanks, pumps, other utility lines up to points of common connection, and all adjacent sidewalks, landscaping, driveways, parking lots, fences and signs located in the areas which are adjacent to and included within the Premises, if any. Such repair and replacements include capital expenditures and repairs whose benefit may extend beyond the Term. If Tenant fails to perform any repair or replacement for which

Tenant is responsible, Landlord may perform such work and be reimbursed by Tenant within ten (10) days after written demand therefor.

Tenant hereby acknowledges that Landlord shall have no obligation to make any repairs or replacements to any portion of the Premises and any improvements located thereon, nor shall Landlord have any obligation hereunder to maintain any portion of the Premises or any improvements located thereon. Landlord shall incur no expense, nor have any obligation of any kind whatsoever in connection with maintenance of the Premises, and Tenant expressly waives the benefits of any statute or judicial decision now or hereafter in effect which would otherwise afford Tenant the right to make repairs at Landlord's expense or to terminate this Lease because of Landlord's failure to keep the Premises in good order, condition and repair.

**9. Assignment and Subletting**. Tenant will not, without Landlord's prior written consent, in Landlord's sole discretion: (i) assign, transfer, or sublease this Lease or any estate or interest herein, whether directly or by operation of Law; (ii) if Tenant is an entity other than a corporation whose stock is publicly traded, permit the transfer of an ownership interest in Tenant so as to result in a change in the current control of Tenant; (iii) grant any license, concession, or other right of occupancy of any portion of the Premises; or (iv) permit the use of the Premises by any parties other than Tenant.

**10. Alterations and Additions by Tenant**. Tenant shall make no alterations in or additions to the Premises without the prior written consent of Landlord which may be withheld in its sole and absolute discretion.

**11. Legal Use; Violations of Insurance Coverage; Nuisance**. Tenant will not occupy or use any portion of the Premises for any purpose other than the Sole Permitted Use, and any purpose directly, commonly, and reasonably associated with the Sole Permitted Use shall be conducted in compliance with all Laws.

**12. Laws and Regulations**. Tenant at its sole expense will use and maintain the Premises in a clean, safe, and healthful condition and will comply with all applicable laws, ordinances, orders, rules, permits (including but not limited to permits commonly associated with industrial use or occupancy in the Kansas City, Missouri area or Jackson County), statutes, requirements, and regulations of any governmental authority having jurisdiction over the use, conditions, or occupancy of the Premises (**"*Laws*"**), including but not limited to any regulations or ordinances imposed upon Tenant by the Missouri Department of Natural Resources as a result of its Sole Permitted Use.

**13. Indemnity, Liability and Loss or Damage**. LANDLORD SHALL NOT BE LIABLE TO TENANT OR TENANT'S AGENTS, EMPLOYEES, GUESTS, INVITEES, INDEPENDENT CONTRACTORS, OR ANY PERSON CLAIMING BY, THROUGH OR UNDER TENANT FOR ANY INJURY TO PERSON, LOSS OF OR DAMAGE TO PROPERTY, OR FOR LOSS OF OR DAMAGE TO TENANT'S BUSINESS, OCCASIONED BY OR THROUGH THE ACTS OR OMISSIONS OF LANDLORD, OR BY ANY CAUSE WHATSOEVER EXCEPT TO THE EXTENT ARISING FROM OR OUT OF LANDLORD'S GROSS NEGLIGENCE OR WILLFUL WRONGDOING. UNLESS AND TO THE EXTENT ARISING FROM OR OUT OF LANDLORD'S GROSS NEGLIGENCE OR WILLFUL WRONGDOING, LANDLORD SHALL NOT BE LIABLE FOR, AND, SUBJECT TO SECTION 30, TENANT SHALL INDEMNIFY AND HOLD HARMLESS LANDLORD AND ITS OFFICERS, EMPLOYEES, AGENTS, CONTRACTORS, EMPLOYEES, INVITEES, AND LICENSEES (THE "***LANDLORD PROTECTED PARTIES***"), HARMLESS FROM ALL SUITS, ACTIONS, DAMAGES, LIABILITY AND EXPENSE IN CONNECTION WITH LOSS OF LIFE, BODILY OR PERSONAL INJURY OR PROPERTY DAMAGE, OR ANY BREACH OF THIS LEASE, ARISING FROM OR OUT OF (I) ANY OCCURRENCE IN, UPON, AT OR FROM THE PREMISES, (II) THE OCCUPANCY OR USE BY TENANT OR ITS AGENTS, CONTRACTORS, EMPLOYEES, INVITEES, OR LICENSEES, OF THE PREMISES OR ANY PART THEREOF, (III) THE PRESENCE OF ANY HAZARDOUS MATERIALS ON, BENEATH, OR FROM THE PREMISES BY THE TENANT PROTECTED PARTIES (DEFINED HEREIN) OR ANY THIRD-PARTY, AND ANY CLEAN-UP OR REMEDIATION THEREOF, OR (IV) OCCASIONED WHOLLY OR IN PART BY ANY NEGLIGENT OR WILLFUL ACTION OR OMISSION OF TENANT, ITS AGENTS, CONTRACTORS, EMPLOYEES,

INVITEES, OR LICENSEES. If Landlord shall be made a party to any action commenced by or against Tenant, Tenant shall protect and hold Landlord harmless therefrom and on demand pay all costs, expenses, and reasonable attorney's fees incurred by Landlord in connection therewith, except to the extent caused by the gross negligence or willful wrongdoing of Landlord. The indemnities set forth in this Lease shall survive termination or expiration of this Lease.

LANDLORD SHALL INDEMNIFY, DEFEND, RELEASE, AND HOLD TENANT AND ITS OFFICERS, EMPLOYEES, AGENTS, GUESTS, INVITEES, REPRESENTATIVES, INDEPENDENT CONTRACTORS, AND ASSIGNS (THE "***TENANT PROTECTED PARTIES***") FROM ANY AND ALL CLAIMS TO THE EXTENT ARISING FROM LANDLORD'S BREACH OF THIS LEASE AND/OR THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF LANDLORD OR THE LANDLORD PROTECTED PARTIES AND FROM ANY AND ALL COSTS, ATTORNEYS' FEES, EXPENSES, AND LIABILITIES INCURRED IN THE DEFENSE OF ANY SUCH CLAIM OR ANY ACTION OR PROCEEDING BROUGHT THEREON. If Tenant shall be made a party to any action commenced by or against Landlord, Landlord shall protect and hold Tenant harmless therefrom and on demand pay all costs, expenses, and reasonable attorney's fees incurred by Tenant in connection therewith, except to the extent caused by the negligence or willful wrongdoing of Tenant or the Tenant Protected Parties. The indemnities set forth in this Lease shall survive termination or expiration of this Lease.

EXCEPT AS OTHERWISE STATED IN THIS LEASE, IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR INDIRECT, SPECIAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES. ANY DAMAGES ARISING FROM TENANT'S BREACH OF SECTIONS 20 OR 50 OF THE LEASE ARE EXPRESSLY EXCLUDED FROM THE LIMITATIONS OF THIS PARAGRAPH.

**14.** **Rules**. Tenant will comply fully, and will cause Tenant's agents, employees to comply fully, with all rules and regulations of the Land provided by Landlord at any time (the "***Rules and Regulations***"), which Landlord may change as Landlord may deem advisable. In the event of any conflict between the Lease and the Rules and Regulations, the Lease will control.

**15.** **Entry for Repairs and Inspection**. Landlord and its agents and representatives shall have the right to enter into and upon any and all parts of the Premises at reasonable hours only after providing Tenant with 24-hours written notice (or, in an emergency, at any hour and without notice) to inspect same or clean or make repairs or alterations or additions to the Premises or the Land as Landlord may deem necessary, or to comply with any requirements imposed upon the Landlord by any governmental entities, all to be determined in Landlord's sole and absolute discretion. Landlord may temporarily close gates, doors, and interrupt or temporarily suspend Premises services and facilities in accordance with this Section 15 provided that Landlord will take reasonable steps to minimize any interference with Tenant's business operations in the Premises, and Tenant shall not be entitled to any abatement or reduction of Rent by reason thereof.

**16.** **Casualty**.

a. If the Premises are damaged or destroyed by fire, earthquake, or other identifiable event of sudden, unexpected or unusual nature (each, a "***Casualty***"), Tenant shall give immediate written notice thereof to Landlord.

b. If such damage was caused by a Casualty covered by the insurance carried by Landlord, and such damage can be repaired within one hundred eighty (180) days from the commencement of repairs, then Landlord shall repair and restore the Premises to substantially the same condition as existed at the time of such Casualty. If the Premises shall be damaged: (i) by a Casualty not covered by the insurance carried by Landlord; or (ii) to an extent that it cannot be repaired within one hundred eighty (180) days from the commencement of repairs, then Landlord shall have the option to terminate this Lease by so notifying the Tenant within thirty (30) days after Landlord's receipt of notice of such Casualty. Failure to give notice within such thirty (30) day period shall be deemed an election not to terminate this Lease, and Landlord shall proceed to repair and restore the

Premises and the Project as aforesaid. Tenant agrees that during any period of reconstruction or repair of the Premises it will continue the operation of its business within the Leased Premises to the extent practicable.

c. To the extent Landlord actually receives rent loss insurance applicable to the Premises, the monthly installments of Base Rental required to be paid by Tenant shall be abated during Landlord's periods of repair and restoration of the Premises in proportion to the portions of the Premises, if any, which are rendered untenantable by the Casualty until Landlord's repairs and restoration of the Premises are completed, or if the Premises are not repaired and restored, until the termination date hereof. There shall be no abatement of Additional Charges and other charges provided for herein. No damages, compensation, or claims shall be payable by Landlord for loss of the use of the whole or any part of the Premises, Tenant's personal property, or any inconvenience, loss of business or annoyance arising from any repair and reconstruction. If the damage results from a cause not insured by rent loss insurance payable to Landlord, Tenant shall not be entitled to any abatement or reduction of any Base Rental or other sums due hereunder. If this Lease is terminated as provided in Section 16(b), all Rent shall be apportioned and paid up to the termination date, any Rent paid and attributable to the period after such termination shall be refunded to Tenant, and the parties hereto shall have no further obligations hereunder. Landlord shall not be liable for the cost and expense of the repair or replacement of any alterations, improvements, additions, fixtures, furniture, equipment, furnishings, or other personal property which Tenant is obligated to insure or which it may be entitled to remove from the Premises pursuant to the terms hereof. Notwithstanding anything to the contrary contained herein, there shall be no Rent abatement if the Premises are unusable due to damage or destruction caused by or related to the fault or negligence of Tenant or its employees, agents, contractors or subcontractors. Tenant agrees that Landlord may, but shall not be obligated to, provide and maintain rental loss, business income, business interruption or similar insurance during the Term.

d. Anything contained in the foregoing to the contrary notwithstanding, Landlord shall have no obligation whatsoever to repair, reconstruct, or restore the Premises when the damage resulting from any Casualty covered under this Section 16 occurs during the last eighteen (18) months of the Term. If Landlord elects not to repair, reconstruct or restore the Premises, Tenant may, at its option, terminate this Lease, such termination to be effective as of the date of the Casualty and any Rent paid and attributable to the period after such termination date shall be refunded to Tenant.

e. Anything contained in the foregoing to the contrary notwithstanding, in the event any mortgagee of Landlord holding any lien or security interest in the Premises or the Land for the performance of an obligation of Landlord shall not concur in the application of any insurance proceeds to the repair or reconstruction of the Premises, Landlord shall not be obligated to repair or reconstruct the Premises and may, at its option, terminate this Lease, such termination to be effective as of the date of the Casualty and any Rent paid and attributable to the period after such termination date shall be refunded to Tenant.

f. Landlord's obligation to rebuild and repair under this Section 16 is limited to restoring the Premises to substantially the condition in which the same existed prior to such Casualty, exclusive of any alterations, additions, improvements, fixtures, and equipment installed by Tenant. Tenant agrees that promptly after completion of such work by Landlord, Tenant will proceed with reasonable diligence and at Tenant's sole cost and expense to restore, repair, and replace all alterations, additions, improvements, fixtures and equipment installed by Tenant and all furnishings, inventory, signs, and personal property located at the Premises.

**17. Condemnation**. If the Premises or any portion thereof is taken under the power of eminent domain or sold by Landlord under the threat of the exercise of said power (all of which is herein referred to as "***condemnation***"), this Lease shall terminate as to the part so taken as of the date the condemning authority takes title or possession, whichever occurs first. If more than twenty-five percent (25%) of the Premises is taken by condemnation, either Landlord or Tenant may terminate this Lease as of the date the condemning authority takes possession by notice in writing of such election within twenty (20) days after Landlord shall have notified Tenant of the taking or, in the absence of such notice, then within twenty (20) days after the condemning authority shall have taken possession. If this Lease is not terminated by either Landlord or Tenant then it shall remain in full force and effect as to the portion of the Premises remaining, provided the monthly Base Rental and Additional

Charges shall be reduced based on the re-measurement of the Premises, as the case may be. If this Lease is not terminated, Landlord agrees, at Landlord's sole cost, to restore the Premises as soon as reasonably possible but only to the extent of condemnation proceeds actually received. All awards for the taking of any part of the Premises or any payment made under the threat of the exercise of eminent domain shall be the property of Landlord, whether made as compensation for diminution of value of the Premises, or for the taking of the fee, or as severance damages; *provided, however*, that Tenant shall be entitled to any award for loss of or damage to Tenant's Personalty to the extent it will not reduce Landlord's award.

**18.** **Landlord's Security Interest**. Landlord shall have, and Tenant grants unto Landlord, a security interest in all the Tenant's Personalty and other property of Tenant now or hereafter placed in, upon, or about the Premises that is owned directly and solely by Tenant (i.e. that is not leased by Tenant or owned by a party other than Tenant), as security for all the obligations of Tenant under this Lease. Tenant shall not remove any of said property from the Premises until all Tenant's obligations under this Lease have been satisfied in full. Upon the occurrence of an event of default by Tenant, Landlord may, in addition to any other remedies provided herein, exercise all rights of a security party with respect to property that is subject to a security interest of Landlord. Upon request by Landlord, Tenant agrees to execute and deliver to Landlord a financing statement in form sufficient to perfect the security interest of Landlord in the aforementioned property and proceeds thereof under the provisions of the Missouri Uniform Commercial Code. Upon request by Landlord, Tenant shall provide the name and address of any entity that has, or claims to have, an interest (including, without limitation, a security interest) in any property located on the Premises and a description of such property. Failure to provide such list shall result in a presumption that all property located in the Premises belongs to Tenant free from all claims. Without intending to exclude any other manner of giving Tenant any required notice, any requirement of reasonable notice to Tenant of Landlord's intention to dispose of any collateral pursuant to the enforcement of said security interest shall be met if such notice is given in the manner prescribed in this Lease at least five (5) days before the time of any such disposition. Landlord shall have all the rights and remedies of a secured party under Law, which rights and remedies shall be in addition to Landlord's rights provided by Law or by the other terms and provisions of this Lease..

**19.** **Surrender of Premises; Abandonment of Personalty**.

a. *Surrender of Premises.* Immediately upon and at the time of the expiration of the Term or earlier termination of the Lease, Tenant shall deliver to Landlord: (i) the Premises in the condition that existed as of the Commencement Date (ordinary wear and tear and condemnation excepted), and (ii) all forms of access to the Premises (e.g. keys and/or access cards). In connection with its obligations in the foregoing sentence, Tenant shall remove all debris from the Premises, including but not limited to scrap metals, wood scraps, waste products, and other refuse and trash (collectively, the "***Debris***", which the parties hereby agree for the purposes of this Lease shall include all of Tenant's pallets [whether new, used, broken or destroyed], and/or any component parts thereof). Tenant shall be responsible for all costs associated with the removal and disposal of the Debris, including but not limited to any fees or charges imposed by any governmental agency or private entity. Tenant agrees to indemnify and hold harmless Landlord from any and all claims, damages, costs, or expenses arising out of or related to Tenant's failure to comply with this provision, including but not limited to Landlord's cost to remove the Debris, actual or consequential damages, and any charges, fines or penalties imposed by any governmental agency or private entity.

b. *Abandonment of Personalty.* Immediately upon and at the time of the the expiration of the Term or earlier termination of the Lease, Tenant shall also remove Tenant's Personalty from the Premises at Tenant's sole cost and expense. All items not so removed will be deemed to have been abandoned by Tenant. Landlord may, at its election, thereafter take possession of Tenant's Personalty and either: (i) declare same to be the property of Landlord, or (ii) at the cost and expense of Tenant, store and/or dispose of Tenant's Personalty in any manner and for whatever consideration, Landlord, in its sole discretion, shall deem advisable. Nothing contained herein shall prejudice or impair Landlord's rights as a secured party under Section 18 hereof, and the rights granted to Landlord under this paragraph shall be cumulative of its rights as a secured party.

**20. Holding Over**. Should Tenant continue to hold the Premises after this Lease terminates, whether by lapse of time or otherwise, such holding over shall, unless otherwise agreed by Landlord in writing, constitute and be construed as a tenancy at sufferance subject to all the covenants and obligations of this Lease, and the monthly Base Rental shall be a daily rental equal to one thirtieth (1/30) of 150% of the monthly Base Rental due for the period immediately preceding the holdover. Notwithstanding any requirements of the Lease or Law, Tenant agrees to surrender the Premises in accordance with this Lease on the Expiration Date, or the date the Lease is otherwise terminated, without any additional notice from Landlord including a thirty (30) day notice as may otherwise be required under the Lease or applicable law, and no further notice to Tenant to surrender will be required from Landlord if Tenant has not vacated the Premises on or before the Expiration Date, or the date the Lease is otherwise terminated, notwithstanding that Tenant holds over after such date and the accrual of holdover rent as provided in this Section 20. If Tenant tenders rent pursuant to the formula in this paragraph, and Landlord accepts such payment, the acceptance of such payment will not operate as a waiver by Landlord of the notice of termination, unless such waiver is in writing and signed by Landlord. Tenant shall be liable to Landlord for all damage which Landlord shall suffer by reason of any holding over by Tenant, including consequential damages, and Tenant shall indemnify the Landlord Protected Parties against all claims made by any other tenant or prospective tenant against Landlord resulting from delay by Landlord in delivering possession of the Premises (or any portion thereof) to such other tenant or prospective tenant, except to the extent caused by the gross negligence or willful misconduct of Landlord.

**21. No Recording**. Tenant agrees that it shall not record this Lease or any memorandum hereof in the public records of Jackson County.

**22. Entire Agreement**. This Lease contains the entire agreement between the parties hereto with respect to the subject matter hereof and supersedes all prior and contemporaneous agreements, understandings, promises, and representations made by either party to the other concerning the subject matter hereof and the terms applicable hereto. This Lease shall not be altered, waived, amended, or extended, except by a written agreement signed by the parties hereto, unless otherwise expressly provided herein.

**23. Transfer of Landlord's Rights**. Upon notice to Tenant, Landlord may freely assign its interest hereunder without consent by Tenant. If Landlord transfers its interest in the Premises, Landlord shall automatically be released from any further obligations hereunder, and Tenant agrees to look solely to the successor in interest of Landlord for the performance of such obligations..

**24. Default**.

a. The following events shall be deemed to be events of default (herein so called) by Tenant under this Lease:

(i) The vacating or abandonment of the Premises by Tenant.

(ii) The failure by Tenant to make any payment of Rent or any other payment required to be made by Tenant hereunder, as and when due provided; provided, however, that no more than once during the Term, Tenant shall be entitled to receive a written notice of such failure to timely pay from Landlord and a five (5) day period thereafter to cure such payment default, and from and after Tenant's second such failure or refusal during the Term, Landlord shall be entitled to exercise any or all of the remedies set forth in Section 24 without prior notice to Tenant.

(iii) The failure by Tenant to observe or perform any of the covenants, conditions or provisions of this Lease, other than the obligations described in Sections 24(a)(ii) and 19(a) above, where such failure continues for a period of thirty (30) days after written notice thereof from Landlord to Tenant.

(iv) (i) The making by Tenant of any general assignment, or general arrangement for the

benefit of creditors; (ii) the filing by or against Tenant of a petition to have Tenant adjudged a bankrupt or a petition for reorganization or arrangement under any law relating to bankruptcy (unless, in the case of a petition filed against Tenant, the same is dismissed within sixty (60) days); (iii) the appointment of a trustee or receiver to take possession of substantially all of Tenant's assets located at the Premises or of Tenant's interest in this Lease, where possession is not restored to Tenant within thirty (30) days; or (iv) the attachment, execution or other judicial seizure of substantially all of Tenant's assets located at the Premises or of Tenant's interest in this Lease..

b. Upon the occurrence of any event of default, Landlord shall have the option to do any one or more of the following without any further notice or demand, in addition to and not in limitation of any other remedy permitted by Law or by this Lease:

(i) Terminate Tenant's right to possession of the Premises by any lawful means , with or without terminating the Lease, and Tenant shall immediately surrender possession of the Premises to Landlord, according to the provisions of this Lease. In the event Landlord terminates the Lease, Landlord shall be entitled to recover from Tenant all damages incurred by Landlord by reason of Tenant's default including, but not limited to, the cost of recovering possession of the Premises; expense of re-letting, including necessary renovation and alteration of the Premises, reasonable attorney's fees, and any real estate commission actually paid; all Rent and other indebtedness accrued to the date of such termination, including any late fees, interest, or other sums charged by Landlord pursuant to the Lease; an amount equal to the then present value of the future rent and all other indebtedness as would otherwise have been required to be paid by Tenant to Landlord during the period following the termination of the Lease measured from the date of such termination to the Expiration Date; and that portion of the leasing commission paid by Landlord applicable to the unexpired Term. In connection with the exercise by Landlord of its rights and remedies hereunder, to the extent (but no further) that Landlord is required by applicable law to mitigate damages, Landlord agrees to mitigate its damages, with Tenant hereby agreeing that Landlord has mitigated its damages if Landlord places the Premises on its inventory of available premises available on the Land, Landlord makes such inventory available to brokers who request same, and Landlord shows the Premises to prospective tenants (or their brokers) who request to see it. Any re-letting of the Premises shall be on such terms and conditions as Landlord in its sole discretion may determine (including without limitation a term different than the remaining Term, rental concessions, alterations and repair of the Premises, lease of less than the entire Premises to any tenant and leasing any or all other portions of the Land before re-letting the Premises). Landlord shall not be liable for, nor shall Tenant's obligations hereunder be diminished because of, Landlord's failure to re-let the Premises or collect rent due in respect of such re-letting. Unpaid installments of Rent or other sums owed by Tenant hereunder shall bear interest at the highest lawful rate per annum from the due date until paid, or at the rate of six percent (6%) over the prime rate of interest published in the Wall Street Journal at the time unpaid Rent (whichever is lower) from the due date until paid. Tenant agrees that Tenant shall be presumed to have abandoned the Premises if Tenant ceases conducting its subiness at the Premises, or informs Landlord in writing or orally that Tenant intends to cease conducting its business in the Premises, for a period of more than seven (7) consecutive days.

(ii) Except as otherwise expressly stated in this Lease, the terms and conditions of this paragraph shall apply. The following provisions of this paragraph shall override and control any conflicting provisions of the Revised Statutes of Missouri, as well as any other statute governing the abandonment of the demised premises by a commercial tenant. Upon the abandonment of the Premises by Tenant, or upon the termination of either this Lease or Tenant's right to possession of the Premises, Landlord may, at its sole election, remove and store, at a location acceptable to Landlord, any property of Tenant that remains on the Premises. The costs of such storage shall be at the expense of Tenant and payable to Landlord upon demand. Tenant specifically authorizes Landlord to deliver any of such property to third parties, at Tenant's sole cost and expense, who make claims against such property or who claim to have a valid security interest in such property superior to the claim of Landlord. Landlord is entitled to rely (without any duty to investigate or corroborate independently such claim) upon any

evidence of the rights and claims of such third parties presented to Landlord, which evidence Landlord believes in its sole judgment gives such third parties the right to possess the property, and Tenant releases Landlord and the Landlord Parties from any and all suits, actions, legal or administrative proceedings, demands, claims, liabilities, fees, fines, penalties, losses, damages, expenses or costs, including interest, court costs and attorneys' fees that Tenant may have because of any action or omission (including negligence) by such parties in connection with the return or delivery of such property to third parties. In addition to Landlord's other rights and remedies under this Lease or the law, as may exist from time to time, if Tenant does not physically claim and actually remove any and all Tenant's Personalty left on or in the Premises after Tenant abandons the Premises, or Landlord terminates either the Lease or Tenant's right of possession, and then within fourteen (14) days after the date on which Landlord gives written notice to Tenant at Tenant's last known address as reflected in records of Landlord stating that Landlord has recovered possession of the Premises and intends to dispose of the remaining Tenant's Personalty located therein, after such fourteen (14) day period, Landlord may deem such remaining Tenant's Personalty abandoned and dispose in any way of all or any portion thereof as Landlord deems fit. Nothing contained herein, however, shall be deemed to be construed to be a waiver or subordination of Landlord's security interest in Tenant's Personalty hereunder, and Landlord shall not be obligated to return any of Tenant's Personalty remaining in the Premises after abandonment if such property is covered by any of Landlord's security interests .

(iii) Maintain Tenant's right to possession, in which case this Lease shall continue in effect whether or not Tenant has abandoned the Premises. In such event, Landlord may enforce all of Landlord's rights and remedies under this Lease, including the right to recover Rent as it becomes due hereunder.

(iv) Pursue any other remedy now or hereafter available to Landlord under the laws or judicial decisions of the State of Missouri.

(v) Landlord may do whatever Tenant is obligated to do by the provisions of this Lease (and in the event of imminent harm or danger to either person or property, may do so immediately and without waiting for Tenant to perform), and Tenant agrees to reimburse Landlord within ten (10) business days upon demand for any expenses which Landlord may incur in its actions pursuant to this subparagraph, and Landlord shall not be liable for damages resulting to Tenant from such action, except to the extent caused by the gross negligence or willful misconduct of Landlord..

(vi) Pursuit of any of the foregoing remedies shall not preclude pursuit of any of the other remedies herein provided or any other remedies provided by Law or equity. Any re-letting by Landlord shall be without notice to Tenant, and if Landlord has not terminated this Lease, the re-letting may be in the name of Tenant or Landlord, as Landlord shall elect. Any re-letting shall be for such term or terms (which may be greater or less than the period which, in the absence of a termination of this Lease, would otherwise constitute the balance of the Term) and on such terms and conditions (which may include free rent, rental concessions or tenant inducements of any nature) as Landlord in its absolute discretion may determine, and Landlord may collect and receive any rents payable by reason of such re-letting. In the event of any re-letting, Tenant shall pay to Landlord on demand the cost of renovating, repairing and altering the Premises for a new tenant or tenants, and the cost of advertisements, brokerage fees, reasonable attorney's fees and other costs and expenses incurred by Landlord in connection with such re-letting. If any Rent actually collected by Landlord upon any such re-letting for any calendar month are in excess of the amount of Rent payable by Tenant under this Lease for the same calendar month, the amount of such excess shall belong solely to Landlord and Tenant shall have no right with respect thereto. If it is necessary for Landlord to institute suit against Tenant to collect the Rent due hereunder or any deficiency between the Rent payable by Tenant under this Lease for a calendar month and the Rent actually collected from Tenant by Landlord for such calendar month, Landlord shall have the right to allow such deficiency to accumulate and to bring an action upon several or all of such rental

deficiencies at one time. No suit shall prejudice in any way the right of Landlord to bring a similar action for any subsequent rental deficiency or deficiencies.

(vii) In the event of any default by Landlord, Tenant will give Landlord written notice specifying such default with particularity, and Landlord shall thereupon have thirty (30) days (or such longer period as may be required in the exercise of due diligence) in which to cure any such default. Unless and until Landlord fails to so cure any default after such notice, Tenant shall not have any remedy or cause of action by reason thereof. If Landlord fails to timely cure its default, Tenant may, as its sole and exclusive remedy, bring an action against Landlord to collect the actual (but not any punitive or consequential) damages suffered by Tenant as a result of such default. In no event shall Tenant have the right to terminate this Lease, or to abate or offset against Rent, due to Landlord's default.

**25.** **Waiver; Attorney's Fees**. No act or thing done by Landlord or its agents during the Term shall be deemed an acceptance of an attempted surrender of the Premises, and no agreement to accept a surrender of the Premises shall be valid unless made in writing and signed by Landlord. No reentry or taking possession of the Premises by Landlord shall be construed as an election on its part to terminate this Lease, unless a written notice of such intention, signed by Landlord, is given by Landlord to Tenant. Landlord's acceptance of Rent following an event of default hereunder shall not be construed as Landlord's waiver of such event of default. No waiver by either party of any violation or breach of any of the terms, provisions and covenants herein contained shall be deemed or construed to constitute a waiver of any other violation or breach of any of the terms, provisions and covenants herein contained. Forbearance by either party to enforce one or more of the remedies herein provided upon an event of default shall not be deemed or construed to constitute a waiver of any other violation or default. The failure of Landlord to enforce any of the Rules and Regulations described in this Lease against Tenant or any other tenant of the Land shall not be deemed a waiver of any such Rules and Regulations. No provision of this Lease shall be deemed to have been waived by either party unless such waiver is in writing and is signed by that party. The rights granted to Landlord in this Lease shall be cumulative of every other right or remedy which Landlord may otherwise have at law or in equity. The exercise of one or more rights or remedies by Landlord shall not prejudice or impair the concurrent or subsequent exercise of other rights or remedies by Landlord. If either party brings any action under this Lease, or if Landlord consults or places this Lease or any amount payable by Tenant hereunder with an attorney for the enforcement of the rights of Landlord hereunder, then Tenant agrees to pay on demand from the party the reasonable attorney's fees and other costs and expenses incurred by Landlord in connection therewith.

**26.** **Quiet Possession**. Landlord covenants that Tenant, provided Tenant is not in default hereunder, shall and may peacefully and quietly have, hold, and enjoy the Premises without any disturbance from Landlord subject to the terms of this Lease and all matters filed of record.

**27.** **Severability**. If any clause or provision of this Lease is illegal, invalid or unenforceable under present or future Laws effective during the Term, the remainder of this Lease shall not be affected thereby, and in lieu of each clause or provision that is illegal, invalid or unenforceable, there be added a clause or provision as similar in terms to such illegal, invalid or unenforceable clause or provision as may be possible and be legal, valid and enforceable.

**28.** **Security Deposit**. The Security Deposit shall be held by Landlord without liability for interest and as security for the performance by Tenant of Tenant's covenants and obligations under this Lease, it being expressly understood that the Security Deposit shall not be considered an advance payment of Rent or a measure of Landlord's damages in case of default by Tenant upon the occurrence of any event of default by Tenant or upon termination of this Lease. Landlord may commingle the Security Deposit with other funds. Landlord may, from time to time, without prejudice to any other remedy, use the Security Deposit to the extent necessary to make good any arrearages of Rent or to satisfy any other covenant or obligation of Tenant hereunder. Following any such application of the Security Deposit, Tenant shall pay to Landlord on demand the amount so applied to restore the Security Deposit to its original amount. If Tenant is not in default at the termination of this Lease, the balance of the Security Deposit remaining after any such application shall be returned by Landlord to Tenant

within 60 days following the Expiration Date. If Landlord transfers its interest in the Premises during the Term, Landlord may assign the Security Deposit to the transferee and thereafter shall have no further liability for the return of, or any other matter relating to, such Security Deposit.

**29. Representations.**

a. *Standing; Authority.* The parties represent and warrant to one another that each is and will remain during the Term a duly formed and existing entity qualified to do business in Missouri, that each party has full right and authority to execute and deliver this Lease, and that each person signing on behalf of each party is authorized to do so.

b. *OFAC.* Neither party nor, to that party's actual knowledge, any of its respective partners, members, shareholders, owners, employees, officers, directors, representatives, or agents is or will become a person or entity with whom U.S. persons or entities are restricted from doing business under regulations of the Office of Foreign Assets Control of the Department of the Treasury (including those named on the OFAC's Specially Designated Nationals and Blocked Persons List) or under any statute, executive order (including Executive Order 13224, Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism, effective September 24, 2001), or other governmental action.

**30. Waiver of Subrogation**. Subject to the terms of this Lease, Tenant waives any cause of action it might have against Landlord on account of any loss or damage to property or any injuries to or death of any person which is then covered or would have been covered (had the insurance policies required under this Lease been obtained) by the insurance policies required to be carried by Tenant under this Lease, provided that if the cost of restoring the loss or damage exceeds the amount of property damage insurance proceeds paid to Tenant on account of the loss or damage (or the amount of coverage afforded by the policies required to be carried by Tenant under this Lease had the insurance policies required under this Lease been obtained), Landlord shall remain liable to Tenant for the amount of such excess. The foregoing release will not apply to (a) losses or damages in excess of actual or required policy limits (whichever is greater), nor to (b) any deductible applicable under any policy obtained by the waiving party. These provisions are subject to and cumulative of Section 13. Tenant shall obtain endorsements in the policies described below providing such waiver of subrogation, where applicable.

**31. Insurance**. As used in this Section 31, the term "***insuring party***" shall mean the party who has the obligation to obtain the insurance required hereunder.

a. Tenant's Insurance. Tenant shall obtain and maintain during the Term the following insurance coverages:

(i) Commercial General Liability. Commercial General Liability insurance insuring Landlord and Landlord's lender and property manager and/or management company as Additional Insureds, and Tenant against any liability arising out of the ownership, use, occupancy or maintenance of the Premises and all areas appurtenant thereto. Such insurance shall be in an amount of not less than $1,000,000 per occurrence, and $2,000,000 in the aggregate for property damage, bodily injury to or death in any one accident or occurrence. . The limits of said insurance shall have a Landlord's Protective Liability endorsements attached thereto. If Tenant shall fail to procure and maintain said insurance, then Landlord may, but shall not be required to, procure and maintain the same, but at the expense of Tenant, the cost of which shall be paid by Tenant on demand. Tenant's commercial general liability insurance policy shall (a) be endorsed to include, as insureds and as provided above, Landlord, Landlord's property manager and/or management company, Landlord's lender, and any other Landlord Protected Party, (b) be endorsed to include cross-liability and severability of interest provisions, (c) state, or be endorsed to state, that this insurance is primary insurance and non-contributory as regards to any other insurance carried by Landlord and/or Landlord's management company, and (d) include the following coverages: (i) Products/Completed Operations; (ii) Contractual Liability Coverage specifically in support of, but

not limited to, the indemnity sections of this Lease ; and (iii) Contractual Exclusion deleted as respects Personal Injury.

(ii) Property Insurance. "Commercial Property Insurance insuring Tenant's merchandise, leasehold improvements, signs, fixtures, business personal property, plate glass, code-mandated upgrades to property required to be added in the course of rebuilding after a casualty, computer and electronic data processing equipment, issued on a replacement cost basis under an "all risk" coverage form, naming Landlord and Landlord's lender each as a Loss Payee.

(iii) Workers Compensation. Workers' Compensation Insurance (conforming to the requirements of the Missouri Department of Insurance) or, if Tenant is a nonsubscriber of Worker's Compensation, insurance from a private insurer, providing income and medical benefits for work-related injuries and illnesses of Tenant's employees.

(iv) Employers Liability. Employers Liability with limits of $1,000,000 for each accident, bodily injury by accident or disease.

(v) Commercial Automobile. Commercial Automobile Liability including garage liability (if applicable) covering both owned and non-owned vehicles of Tenant with a combined single limit of not less than $1,000,000 for bodily injury and property damage, with both a waiver of subrogation in favor of Landlord and an Additional Insured Endorsement.

(vi) Commercial Excess Liability. Commercial Excess Liability with a minimum limit of $5,000,000 in excess of items (i), (iv) and (v) above with terms consistent with the underlying policies. Such policy shall include Landlord, Landlord's management company, and any other indemnified party as additional insureds on a primary and non-contributory basis as regards any other insurance carried by Landlord and/or Landlord's management company, whether collectible or not.

(vii) Business Interruption. Business interruption insurance in an amount sufficient to cover Tenant's obligations for rent for an 18-month period.

(viii) Builder's Risk. At all times that Tenant is making any alterations or otherwise performing construction work at or to the Premises, an "all risk" form of Builder's Risk Insurance on a completed value form, with full replacement cost coverage covering all hard costs and recurring soft costs, in an amount not less than the total improvement cost with a maximum deductible of $25,000.00 and with appropriate coverage permitting occupancy prior to full completion and appropriate coverage for the cost of debris removal from the Premises.

(ix) Contractors and Third-Party Vendors. Whenever Tenant shall engage third-party vendors or undertake any alterations, additions, improvement or other work in. to or about the Premises, Tenant's insurance must extend to and include coverage for injuries to persons and damage to property arising in connection with such work, including without limitation liability under any applicable structural work act, and such other insurance as Landlord shall reasonably require. In addition to Tenant's insurance, all contractors hired by or through Tenant, who enter the Premises, are to have insurance meeting the requirements set forth herein, all issued by acceptable underwriters and otherwise meeting the liability requirements of this Section 6. To the extent applicable, such contractor or vendor shall also provide professional liability and environmental liability coverages in an amount not less than $1,000,000 per claim. Tenant shall provide Landlord with Certificates of Insurance for each such contractor or vendor prior to such contractor or vendor entering the Premises.

(x) Other. Such other insurance as Landlord shall reasonably require and will not exceed those required for similar properties of similar size, location, and class.

b. Insurance required hereunder shall be in companies licensed to do business in the State of

Missouri rated A-VII or better by AM Best. Tenant shall deliver prior to possession to Landlord certificates of insurance evidencing the existence and amounts of such insurance and any party providing services to or on behalf of Tenant shall deliver to Landlord, prior to entering the Premises, evidence satisfactory to Landlord that such other party is in compliance with the insurance requirements under this Lease. No such policy shall be cancelable or subject to material modification except after not less than thirty (30) days' prior written notice to Landlord.. Tenant shall prior to the expiration of such policies, furnish Landlord with certificates of insurance for renewals. Tenant shall not do or permit to be done anything that would invalidate the insurance policies referred to in this Section 31. Tenant shall upon Landlord's demand, reimburse Landlord for any additional premiums to the extent attributable to any act or omission or operation of Tenant causing such increase in the cost of insurance of Landlord, and if the insurance policies maintained hereunder cover other improvements in addition to the Premises, Landlord shall deliver to Tenant a written statement setting forth the amount of any such insurance cost increase and showing in reasonable detail the manner in which it has been computed

c. In the event Tenant shall fail to procure such insurance, or to deliver such policies as required pursuant to the terms of this Section 31, Landlord may, at its option, procure such policies for the account of Tenant, and the cost thereof shall be paid by Tenant to Landlord within fifteen (15) days after delivery to Tenant of bills therefor. This paragraph shall not be deemed to be a waiver of any of Landlord's rights and remedies, under any other provision of this Lease.

d. Landlord shall obtain and maintain during the Term: (i) a policy or policies of property insurance covering loss or damage to the building or other permanent improvements at the Premises, in the amount of the full replacement value thereof, on a special causes of loss coverage form and including sprinkler leakage (if applicable) ("***Landlord's Property Insurance***"), (ii) if the Land is located in a flood zone, a policy of flood insurance, in the amount of the full replacement value of the permanent improvements (the "***Flood Insurance***"), and (iii) at Landlord's option, commercial general liability insurance (the "***General Liability Insurance***"). Landlord's Property Insurance and Flood Insurance shall provide for payment of loss to Landlord or to Landlord's mortgagee any insurance hereunder. Tenant hereby agrees that the costs of such premiums and/or deductibles for Landlord's Property Insurance, Flood Insurance, and General Liability Insurance shall be included as a component of the Additional Charges.

**32.** **Binding Effect**. The provisions of this Lease shall be binding upon and inure to the benefit of Landlord and Tenant, respectively, and to their respective heirs, personal representatives, successors and permitted assigns.

**33.** **Notices**. Any notice, consent, request, demand, or other communication required or permitted to be given under this Lease must be in writing and shall be deemed sufficiently given, delivered, and made when (i) delivered in person, or (ii) sent by private courier or national overnight delivery service with proof of delivery and courier fees paid by sender, at the addresses specified below:

To Landlord:
11517 Newton Street
Overland Park, Kansas
Attn: Nancy Lang

To Tenant:
The Premises

with a copy to:

2008 W. Mary
Garden City, Kansas 67846
Attn: Rodney A. Wadel

**34.** **Brokerage**. Tenant warrants to Landlord that it has not been represented by any broker or agent in the negotiation or execution of the Lease. Tenant agrees to indemnify Landlord and hold Landlord harmless from and against all cost, expense or liability for commissions or other compensation or charges claimed by any broker or agent with respect to this Lease.

35. **Subordination**. This Lease and all rights of Tenant hereunder are subject and subordinate to any ground lease, deed of trust, mortgage or other instrument of security which does now or may hereafter cover the Land, Premises or any interest of Landlord therein, and to all advances made on the security thereof, and to all increases, renewals, modifications, consolidations, replacements and extensions of any of such deed of trust, mortgage or instrument of security. Tenant shall, within five (5) business days following the receipt of written request by Landlord, a ground lessee, or by the holder of any deed of trust or mortgage covering the Land, Premises or any interest of Landlord therein, execute, acknowledge, and deliver to Landlord all instruments and certificates that, in the judgment of Landlord, may be necessary or proper to confirm or evidence such subordination. Notwithstanding the generality of the foregoing provisions, Tenant agrees that any such ground lessee or mortgagee shall have the right at any time to subordinate any such ground lease, deed of trust, mortgage or other instrument of security to this Lease on such terms and subject to such conditions as such ground lessee or mortgagee may deem appropriate in its discretion. Tenant further covenants and agrees upon demand by Landlord's mortgagee or other secured creditor of Landlord at any time, before or after the institution of any proceedings for the foreclosure of any such deed of trust, mortgage or other instrument of security, or sale of the Land pursuant to any such deed of trust, mortgage or other instrument of security, or voluntary sale, to attorn to the purchaser upon any such sale and to recognize and attorn to such purchaser as Landlord under this Lease, which agreement shall survive any such foreclosure sale or trustee's sale. Tenant agrees to execute, acknowledge, and deliver to a ground lessee or Landlord's mortgagee all instruments and certificates that Landlord's mortgagee may request to confirm or evidence such attornment. Tenant waives the provisions of any current or future statute, rule or law which may give or purport to give Tenant any right or election to terminate or otherwise adversely affect the Lease and the obligations of Tenant thereunder in the event of any foreclosure proceeding or sale.

36. **Joint and Several Liability**. If there is more than one Tenant named in this Lease (or in any future amendment hereto or due to an assignment hereof), the obligations hereunder imposed upon Tenant shall be joint and several.

37. **Certain Rights Reserved to Landlord**. This Lease does not grant any rights to light or air over or about the Land. Landlord reserves exclusively to itself the use of the areas within the Premises used for the installation of utility lines and other installations serving occupants of the Land and any other areas of the Premises which Landlord must access in order to fulfill its obligations under the Lease as determined by Landlord in its commercially reasonable discretion. Upon notice to Tenant, Landlord also has the right to make other physical changes to the Premises as Landlord deems appropriate, provided the changes do not unreasonably and materially affect Tenant's ability to use the Premises for the Sole Permitted Use. Landlord shall also have the right, but not the obligation, to temporarily close the Land, or any portion thereof, including the Premises, if Landlord reasonably determines that there is an imminent danger of significant damage to the Land, the Premises or of bodily injury to the occupants of the Land or to any person, but only for as long as the danger persists in the reasonable discretion of Landlord. Any exercise of such rights will not entitle Tenant to any abatement or reduction of Rent.

38. **Estoppel Certificates**. Tenant agrees to furnish from time to time, within five (5) business days following the receipt of written request by Landlord, a ground lessee, or by the holder of any deed of trust or mortgage covering the Land or any interest of Landlord therein, an estoppel certificate signed by Tenant confirming and containing factual certifications and representations as to this Lease.

39. **Mechanic's Liens**. Neither party will encumber the other party's respective interest in and to or any part of the Land except that Landlord may encumber its interest in the Land to any lender of Landlord subject to the provisions of Section 35; and if any mechanic's or materialman's lien is filed or claimed against the Land or any part caused by a party, that party will promptly pay same or cause it to be released of record. Notwithstanding the foregoing, each party may contest such mechanic's liens as long as such contest prevents foreclosure of the lien and such party causes such lien to be bonded or insured over, and thereby released, in a manner satisfactory to the other party within such 30-day period.

40. **Taxes and Tenant's Personalty**. Tenant shall be liable for all taxes levied or assessed against the Tenant's Personalty.

41. **Landlord's Liability**. The liability of Landlord to Tenant for any default by Landlord under the terms of this Lease shall be limited to Tenant's actual direct damages and recoverable only from the interest of Landlord in the Land, and none of the Landlord Protected Parties shall be personally liable for such damages or any deficiency. Tenant acknowledges and understands that it has waived any right to claim consequential or punitive damages.

42. **Counterparts.** This Lease may be executed in multiple counterparts, and facsimile/electronic copies and signatures shall be accepted as originals.

43. **No Waiver**. No delay on the part of either party in exercising any right under the Lease will operate as a waiver of such right or any other right of the party under the Lease, nor will any delay, omission or waiver on any occasion be deemed a bar to or a waiver of the same or any other right on any other future occasion.

44. **No Third-Party Beneficiary**. This Lease is for the sole benefit of Landlord, its successors and assigns, and Tenant, its permitted successors, and assigns, and it is not for the benefit of any third party.

45. **Number and Gender**. Words of any gender used in this Lease shall be held and construed to include any other gender, and words in the singular number shall be held to include the plural, unless the context otherwise requires.

46. **Force Majeure**. Whenever a period of time is prescribed for the taking of an action by Landlord or Tenant, the period of time for the performance of such action shall be extended by the number of days that the performance is actually delayed or made impracticable due to labor strikes, acts of God, severe weather conditions (including but not limited to rainstorms, windstorms, and flooding), , war, terrorist attacks (including bio-chemical attacks), civil disturbances, acts of the public enemy, governmental embargo restrictions, epidemics, pandemics, and other causes beyond the reasonable control of the performing party, including, but not limited to, actions or inactions on the part of local, state or federal governmental authorities. Notwithstanding anything to the contrary, the above described events shall not extend any period of time for the payment of Rent or other sums payable by Tenant, nor shall it be used to vitiate Tenant's obligation to maintain insurance hereunder or perform its indemnity, defense, and hold harmless obligations hereunder.

47. **Landlord's Fees; Determination of Fees**. Whenever Tenant requests Landlord to take any action or give any consent required or permitted under this Lease, Tenant will reimburse Landlord for Landlord's reasonable costs incurred in reviewing the proposed action or consent, including without limitation reasonable attorneys', engineers' or architects' fees, within 10 days after Landlord's delivery to Tenant of a statement of such costs, without regard to whether Landlord consents to any such proposed action.

48. **APPLICABLE LAW; CONSENT TO JURISDICTION**. THIS LEASE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF MISSOURI AND THE LAWS OF THE UNITED STATES APPLICABLE TO TRANSACTIONS IN THE STATE OF MISSOURI. THE PARTIES IRREVOCABLY AGREE THAT ANY LEGAL ACTION OR PROCEEDING AGAINST IT WITH RESPECT TO THIS LEASE MAY BE MAINTAINED ONLY IN THE COURTS SERVING JACKSON COUNTY, MISSOURI, AND EACH PARTY CONSENTS TO THE JURISDICTION AND VENUE OF SUCH COURTS.

49. **WAIVER OF JURY TRIAL.** TO THE MAXIMUM EXTENT PERMITTED BY LAW, LANDLORD AND TENANT EACH WAIVE RIGHT TO TRIAL BY JURY IN ANY LITIGATION ARISING OUT OF OR WITH RESPECT TO THIS LEASE OR THE PREMISES, AND AGREE THAT ANY CLAIM, COUNTERCLAIM, THIRD-PARTY CLAIM OR DEFENSE SHALL BE DECIDED ONLY BY A JUDGE. AFTER CONSULTATION WITH AN ATTORNEY OF TENANT'S OWN SELECTION (WHICH COUNSEL

WAS NOT DIRECTLY OR INDIRECTLY IDENTIFIED, SUGGESTED OR SELECTED BY LANDLORD OR ANY AGENT OF LANDLORD), TENANT VOLUNTARILY ADOPTS THIS WAIVER. TENANT ACKNOWLEDGES TO LANDLORD THAT TENANT AND LANDLORD ARE NOT IN A SIGNIFICANTLY DISPARATE BARGAINING POSITION.

**50. Hazardous and Toxic Materials**. Tenant and Tenant's employees, agents, contractors, and invitees shall not incorporate into, or use or otherwise place, dispose of, or release anywhere on, beneath or from the Premises, any hazardous or toxic materials, which include asbestos containing materials and all other materials, substances, wastes and chemicals classified as hazardous or toxic substances, materials, wastes or chemicals or otherwise regulated under then-current applicable Laws (collectively, "***Hazardous Materials***"). If Tenant, its employees, agents, or contractors, or any third-party violates the provisions of this paragraph or otherwise contaminate the Premises with any Hazardous Materials, then Tenant shall, at its sole cost and expense, immediately clean up, remove and dispose of the Hazardous Materials, or remove or remediate the contamination in compliance with all applicable Laws and then prevalent industry practice and standards, and shall immediately repair and remediate any damage to the Premises. Landlord shall have the right, but not the obligation, to clean up, remove and dispose of the Hazardous Materials or remove or remediate the contamination in accordance with this Section 50 and to repair or remediate the damage to the Premises without waiting for Tenant's failure to comply with this Section 50 to ripen into a default pursuant to Section 24(a)(iii) hereof.

**51. Landlord's Consent**. Notwithstanding anything to the contrary contained herein, in any action by Tenant asserting that Landlord has unreasonably withheld its consent where Landlord is required by this Lease to be reasonable, Tenant's sole and exclusive remedy shall be for declaratory or injunctive relief, and Tenant hereby express waives all claims for monetary damages, or to modify or terminate this Lease.

**52. Security Services**. Tenant acknowledges and agrees that, while Landlord may patrol the Premises or the Land and while Landlord may construct or install (i) fencing around the Premises and/or Land (and lighting thereon), and (ii) an automatic gate providing access to the Premises and/or Land, Landlord is not providing any security services with respect to the Premises or the Land, and that Landlord shall not be liable to Tenant for, and Tenant waives any claim against Landlord with respect to, (x) any loss by theft or any other damage suffered or incurred by Tenant in connection with any unauthorized entry into the Premises or the Land or any other breach of security with respect to the Premises or the Land, or (y) any loss by theft or any other damage suffered or incurred by Tenant as a result of any deficiency or malfunction in the construction or installation of the Premises' and/or the Land's fencing, automatic gates and/or lights.

**53. No Solicitation**. Tenant agrees not to use the Premises for the solicitation of employees or labor from other tenants leasing a portion of the Land.

**54. Confidentiality**. Tenant acknowledges that the terms and conditions of this Lease are to remain confidential for Landlord's benefit, and may not be disclosed by Tenant to anyone, by any manner or means, directly or indirectly, without Landlord's prior written consent except to Tenant's attorneys, accountants, members, or lender(s) The consent by Landlord to any disclosures shall not be deemed to be a waiver on the part of Landlord of any prohibition against any future disclosure.

**55. Entire Agreement**. This Lease embodies the final, entire agreement between the parties and supersedes any and all prior commitments, agreements, representations, and understandings, whether written or oral, and may not be contradicted or varied by evidence of prior, contemporaneous, or subsequent oral agreements between the parties.

**56. Tenant Financials**. Upon request of Landlord, Tenant shall deliver current financial statements of Tenant (with an opinion by a certified public accountant, if available), including a balance sheet and profit and loss statement for at least two (2) years, all prepared in accordance with generally accepted accounting principles consistently applied. Failure to deliver the required financial statements within fifteen (15) days of a request therefore will be deemed an event of default hereunder.

**57.** **Guarantor.** This Lease is subject to and conditioned upon Tenant's delivery to Landlord, concurrently with Tenant's execution and delivery of this Lease, of a Guaranty in the form of and upon the terms contained in Exhibit "D" attached hereto ("***Guaranty***") and incorporated herein by this reference, which shall be fully executed by ("***Guarantor***").

**58.** **Letter of Credit; Debris Removal.**

a. *Letter of Credit.* To secure Tenant's obligations to remove the Debris as required in Section 19 and Section 58 of this Lease, Tenant shall on or prior to the Lease Execution Date, deliver to Landlord the original irrevocable letter of credit (conditioned only upon a statement that Landlord is entitled to draw on the letter of credit pursuant to the terms of this Lease) in the amount of $1,000,000.00, in the form attached hereto as Exhibit "E", issued by a financial institution acceptable to Landlord and capable of being drawn upon at any of such issuer's offices (the "***Letter of Credit***"). The Letter of Credit shall be for a term commencing on or about the Effective Date and expiring one hundred twenty (120) days after expiration of the Term, and shall be fully assignable by Landlord to its successors-in-interest without the need for Tenant's consent. Said Letter of Credit shall provide that Landlord shall be permitted to draw upon it on multiple occasions following Tenant's failure to remove the Debris as required in Section 19 and Section 58 of this Lease; *provided, however*, that in the event that said Letter of Credit would expire during the pendency of any litigation to resolve whether Tenant failed to remove the Debris as required in Section 19 and Section 58 of this Lease, Landlord may draw upon said Letter of Credit prior to the expiration thereof and hold the proceeds until the final resolution of the litigation.. In the event Landlord draws upon the Letter of Credit as aforesaid, Landlord shall use, apply or retain all or any portion of the proceeds thereof, for (1) the payment of any amount which Landlord may spend or become obligated to spend to remove the Debris, and (2) compensation to Landlord for any losses which Landlord is entitled to recover by reason of any Event of Default under the Lease, including but not limited to, any damage or deficiency arising in connection with the reletting of the Premises and all associated reasonable legal fees.

b. *Tenant Default; Debris Removal.* In the event Tenant commits an event of default in three (3) consecutive months, and regardless of whether Tenant cures such default(s), then notwithstanding anything to the contrary contained herein: (x) upon the third (3rd) such event of default, Landlord may require Tenant to remove all Debris from the Property, such removal to be completed within sixty (60) days of Landlord's delivery of written demand (the "***Removal Deadline***"), and Tenant shall thereafter promptly commence removal of the Debris and prosecute same to completion, even if Tenant subsequently cures such event of default; and (y) if Tenant does not complete the Debris removal by the Removal Deadline, Landlord shall be permitted to remove the Debris at the cost of Tenant and to draw upon the Letter of Credit as set forth in subsection (a) above, even if Tenant subsequently cures such event of default.

[*Signature Page Follows*]

**IN WITNESS WHEREOF**, this Lease is entered into by the parties hereto as set forth above.

NOTICE: THIS LEASE CONTAINS A WAIVER OF THE RIGHT TO TRIAL BY JURY.

**LANDLORD:**

**EHBCO, L.L.C.**, a Missouri limited liability company

By: ______________________________
Nancy Lang, Manager

Date: April 23, 2023

**TENANT:**

**R&R PALLET OF GARDEN CITY INC.**, a Kansas corporation

By: [signature]
Name: Rodney Wadel
Title: President

Date: April 23, 2023

## EXHIBIT "A"

**The Land**

A tract of land located in the East half of the West half of Section 23, Township 50, Range 33 in Kansas City, Jackson County, Missouri, more particularly described as the Westerly 650.00 feet of Tract C in Executive Park, first plat, a subdivision in Kansas City, Jackson County, Missouri, said tract of land more particularly described as follows:

A tract of land located in the East half of the West half of Section 23, Township 50, Range 33 in Kansas City, Jackson County, Missouri, described as follows: Commencing at the Northeast corner of the intersection of Chouteau Trafficway right of way and Stilwell Street right of way, as now located; thence North 52 degrees 25 minutes 10 seconds East along the North line of Stilwell Street as now located, a distance of 1,600.00 feet to the true point of beginning; thence North 37 degrees 34 minutes 50 seconds West, a distance of 991.83 feet, to a point on the South right of way line of Missouri River Levee, as now established; thence Northeasterly, along the South line of the Missouri River Levee, as now established on a curve to the right, having a radius of 21,395.97 feet, a central angle of 01 degrees 48 minutes 27 seconds and along chord of 674.95 feet bearing North 68 degrees 02 minutes 17.5 seconds East, an arc distance of 674.97 feet; thence leaving the South line of the Missouri River Levee, as now established, South 37 degrees 34 minutes 50 seconds East, a distance of 810.11 feet, to a point on the North right of way line of Stilwell Street, as now located; thence South 52 degrees 25 minutes 10 seconds West along the North line of Stilwell Street, as now located, a distance of 650.00 feet, to the true point of beginning.

{TRI048/00118/2326345.DOCX;1/ZIR }

**EXHIBIT "B"**

**The Premises**

**[outlined below]**




{TRI048/00118/2326345.DOCX;1/ZIR }

## EXHIBIT "C"

**Base Rent**

| Months | Monthly Base Rent |
|---|---|
| 1-12 | $31,000.00 |
| 13-24 | $31,930.00 |
| 25-36 | $32,887.90 |

{TRI048/00118/2326345.DOCX;1/ZIR }

## EXHIBIT "D"

### Guaranty

**THIS GUARANTY** ("***Guaranty***") is made by Rodney A. Wadel, a Kansas resident ("***Guarantor***") in favor of **EHBCO, L.L.C.,** a Missouri limited liability company ("***Landlord***") in connection with that certain Lease Agreement (the "***Lease***") between Landlord and R&R Pallet of Garden City Inc., a Kansas corporation ("***Tenant***") (pursuant to which Landlord is to lease to Tenant those premises more particularly described therein (the "***Premises***").

A. Landlord requires this Guaranty as a condition to its execution of the Lease and the performance of the obligations to be performed under the Lease by Landlord.

B. Guarantor has agreed to provide this Guaranty to induce Landlord to enter into the Lease with Tenant and perform its obligations under the Lease.

In consideration of Landlord's agreement to execute the Lease and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor does hereby agree with Landlord as follows:

1. The Lease is hereby incorporated into and made a part of this Guaranty by this reference.

2. Guarantor hereby unconditionally guarantees, as a primary obligor and not as a surety, without deduction by reason of setoff, defense or counterclaim, the full and punctual payment of all sums of rent and other amounts payable to Landlord under the Lease and the full and punctual performance of all terms, covenants and conditions in the Lease to be kept, performed and/or observed by Tenant. Guarantor's obligations under this Guaranty are continuing and unconditional and shall not be diminished or cease until all obligations of Tenant under the Lease have been paid and performed in full or, alternatively, Landlord shall explicitly release Guarantor from its obligations hereunder in a writing signed by Landlord. The foregoing obligations are sometimes referred to hereinafter as the "***Guaranty Obligations***".

3. Guarantor hereby agrees that, without the consent of or prior notice to Guarantor and without affecting any of the obligations of Guarantor hereunder: (a) the Lease Term may be extended and any other term, covenant or condition of the Lease may be amended, compromised, released or otherwise altered by the agreement of Landlord and Tenant, and Guarantor does guarantee and promise to perform all the obligations of Tenant under the Lease as so extended, amended, compromised, released or altered, even if the risks and obligations of Guarantor are thereby materially increased; (b) any other guarantor of to the Lease may be released, substituted or added; (c) any right or remedy under the Lease may be exercised, not exercised, impaired, modified, limited, destroyed, or suspended, all in the sole discretion of Landlord; (d) Landlord or any other person may deal in any manner with Tenant, any other guarantor, or any other person, without consulting or informing Guarantor; (e) Landlord may permit Tenant to holdover at the Premises beyond the Term of or earlier termination date of the Lease, on the terms set forth in the Lease or any amendment thereof; and (f) all or any part of the Premises or of Tenant's rights or liabilities under the Lease may, with the consent of Landlord, be sublet, assigned or assumed.

4. Guarantor hereby forever waives and agrees not to assert as a claim or defense against Guarantor, or otherwise take advantage of: (a) any alleged right of Guarantor to require Landlord to proceed against Tenant, or any other guarantor or person, or to pursue any other security or remedy before proceeding against Guarantor; (b) any defense based on the genuineness, validity, regularity or enforceability of the Lease; (c) any right or defense that may arise by reason of the incapacity, lack of authority, death or disability of Tenant or any other person; and (d) any right or defense arising by reason of the absence, impairment, modification, limitation, destruction or cessation (in bankruptcy, by an election of remedies, or otherwise) of the liability of Tenant, of the subrogation rights of Guarantor or of the right of Guarantor to proceed against Tenant for reimbursement.

Guarantor waives any right, statutory or otherwise, to require or for Tenant to require Landlord to apply Rents received toward the Guaranty Obligations, or to otherwise prioritize the receipt of Rents as against the Guaranty Obligations

5. Guarantor hereby waives and agrees not to assert as a claim or defense against Guarantor, or otherwise take advantage of: (a) any alleged right or defense based on the adequacy or absence of any or all presentments, demands (including demands for payment or performance), notices (including notices of any adverse change in the financial status of Tenant, notices of any other facts which increase the risk to or obligations of Guarantor, notices of non-performance or default by Tenant, and notices of acceptance of this Guaranty) and protests of each and every kind; (b) the defense of any statute of limitations in any action under or related to this Guaranty or the Lease; and/or (c) any right or defense based on a lack of diligence or failure or delay by Landlord in exercising or enforcing its rights under this Guaranty or the Lease, or against any other person or property.

6. Guarantor hereby waives and agrees not to assert as a claim or defense against Guarantor, or otherwise take advantage of any right to: (a) exoneration or discharge, if Landlord's actions shall impair any security or collateral of Tenant, Guarantor or any other person; (b) any security or collateral held by Landlord; (c) require Landlord to proceed against Tenant or any other person, or to exhaust any security or collateral before proceeding against Guarantor; and/or (d) require Landlord to pursue any right or remedy for the benefit of Guarantor.

7. Guarantor shall not, without the prior written consent of Landlord, commence, or join with any other person in commencing, any bankruptcy, reorganization or insolvency proceeding against Tenant. Guarantor's obligations under this Guaranty shall in no way be affected by any bankruptcy, reorganization or insolvency of Tenant or any successor or assignee of Tenant, or by any disaffirmance or abandonment of the Lease or any payment under this Guaranty by a trustee of Tenant in any bankruptcy proceeding including, without limitation, any impairment, limitation, or modification of the liability of Tenant or the estate of Tenant in bankruptcy, or of any remedy for the enforcement of Tenant's liability under the Lease resulting from the operation of any present or future provision of any federal or state bankruptcy or insolvency law or other statute or from the decision of any court. Guarantor shall file in any bankruptcy or other proceeding in which the filing of claims is required or permitted by law all claims which Guarantor may have against Tenant relating to any indebtedness or financial obligation of Tenant to Guarantor, and will, upon request, promptly assign to Landlord all rights of Guarantor thereunder. Landlord shall have the sole right to accept or reject any plan of liquidation or reorganization proposed in any such bankruptcy or other proceeding involving Tenant, and to take any other action which a party filing a claim in such bankruptcy or proceeding is entitled to do. In all such cases, whether in administration, bankruptcy or otherwise, the person or persons authorized to pay such claim of Guarantor with respect to Tenant or its bankruptcy estate shall pay to Landlord the amount payable on such claim and, to the full extent necessary for that purpose, Guarantor hereby assigns to Landlord all of Guarantor's rights to any such payments or distributions to which Guarantor would otherwise be entitled; provided, however, that Guarantor's obligations hereunder shall not be satisfied except to the extent that Landlord receives cash by reason of any such payment or distribution. If Landlord receives anything hereunder other than cash, the same shall be held as collateral for amounts due under this Guaranty.

8. Until all the Tenant's obligations under the Lease are fully performed, Guarantor: (a) shall have no right of subrogation or reimbursement against the Tenant by reason of any payments or acts of performance by Guarantor under this Guaranty; (b) subordinate any liability or indebtedness of the Tenant now or hereafter held by Guarantor to the obligations of the Tenant to Landlord under, arising out of or related to the Lease or Tenant's use of the Premises; and (c) acknowledges that the actions of Landlord may affect or eliminate any rights of subrogation or reimbursement of Guarantor as against Tenant, without any liability or recourse against Landlord.

9. Prior to the execution of this Guaranty and at any time during the Term of the Lease, upon ten (10) days prior written notice from Landlord, Guarantor agrees to provide Landlord with a current financial statement for Guarantor and financial statements for Guarantor for the two (2) years prior to the current financial statement year to the extent not previously delivered to Landlord. Guarantor's financial statements are to be prepared in accordance with generally accepted accounting principles and, if such is the normal practice of Guarantor,

audited by an independent certified public accountant. Guarantor represents and warrants that all such financial statements shall be true and correct statements of Guarantor's financial condition.

10. The liability of Guarantor and all rights, powers and remedies of Landlord hereunder and under any other agreement now or at any time hereafter in force between Landlord and Guarantor relating to the Lease shall be cumulative and not alternative and such rights, powers and remedies shall be in addition to all rights, powers and remedies given to Landlord by law.

11. This Guaranty applies to, inures to the benefit of and binds all parties hereto, their heirs, devisees, legatees, executors, administrators, representatives, successors and assigns. This Guaranty may be assigned by Landlord voluntarily or by operation of law.

12. This Guaranty constitutes the entire agreement between Guarantor and the Landlord with respect to the subject matter hereof. No provision of this Guaranty or right of Landlord hereunder may be waived nor may Guarantor be released from any obligation hereunder, except explicitly in a writing duly executed by the Manager of Landlord, or an authorized executive officer of any successor or assignee of Landlord. The failure to enforce any provision of this Guaranty shall not operate as a waiver of any other breach of such provision or any other provisions hereof. No course of dealing between Landlord and Tenant shall alter or affect the enforceability of this Guaranty according to its terms, or Guarantor's obligations set forth herein.

13. Guarantor hereby agrees to indemnify, protect, defend and hold Landlord harmless from and against, all losses, costs and expenses including, without limitation, all interest, default interest, post-petition bankruptcy interest and other post-petition obligations, late charges, court costs and attorneys' fees and legal expenses, which may be suffered or incurred by Landlord in enforcing or compromising any rights under this Guaranty or in enforcing or compromising the performance of Tenant's obligations under the Lease.

14. The term “Landlord” whenever hereinabove used refers to and means the Landlord in the foregoing Lease specifically named, and also any assignee of said Landlord, whether by outright assignment or by assignment for security, and also any successor to the interest of said Landlord or of any assignee of such Lease or any part thereof, whether by assignment or otherwise. The term "Tenant" whenever hereinabove used refers to and means the Tenant in the foregoing Lease specifically named, and also any permitted assignee of said Lease and also any successor to the interests of said Tenant or assignee of such Lease or any part thereof, whether by permitted assignment, sublease or otherwise including, without limitation, any trustee in bankruptcy and any bankruptcy estate of Tenant, Tenant's assignee or sublessee.

15. If any Guarantor or any other guarantor shall become bankrupt or insolvent, or any application shall be made to have any or all such Guarantors declared bankrupt or insolvent, or any or all Guarantors shall make an assignment for the benefit of creditors, or any or all Guarantors shall enter into a proceeding for the dissolution of marriage, or in the event of death of any or all Guarantors, notice of such occurrence or event shall be promptly furnished to Landlord by such Guarantor or such Guarantor's fiduciary. This Guaranty shall extend to and be binding upon each Guarantor's successors and assigns, including, but not limited to, trustees in bankruptcy and Guarantor's estate and executors.

16. Any notice, request, demand, instruction or other communication to be given to any party hereunder shall be in writing and hand-delivered or sent by overnight commercial carrier, in accordance with the notice provisions of the Lease. The Tenant shall be deemed Guarantor's agent for purposes of notice and notice to Guarantor delivered to the Tenant at the address set forth in the Lease shall constitute notice to Guarantor for all purposes. Notices to Landlord shall be delivered to Landlord's address set forth in the Lease. Landlord, at its election, may provide an additional notice to Guarantor at the address provided under Guarantor's signature below.

17. If either party hereto initiates an action or other proceeding against the other party arising out of or in connection with this Guaranty or the Lease, Guarantor shall be entitled to have and recover from Guarantor the

reasonable attorneys' fees, collection costs and other expense incurred in and in preparation for the action or proceeding. Guarantor hereby waives any right to trial by jury, and agrees that any claim, counterclaim, third-party claim or defense arising out of or in connection with this Guaranty or the Lease shall be decided solely by a judge, sitting without a jury.

18. Guarantor agrees that all questions with respect to this Guaranty shall be governed by, and decided in accordance with, the laws of the State of Missouri, excepting its laws regarding choice of law.

19. Should any one or more provisions of this Guaranty be determined to be illegal or unenforceable, all other provisions shall nevertheless be effective.

20. Time is strictly of the essence under this Guaranty and any amendment, modification or revision hereof.

21. If more than one person signs this Guaranty, each such person shall be deemed a guarantor and the obligation of all such guarantors shall be joint and several. When the context and construction so requires, all words used in the singular herein shall be deemed to have been used in the plural. The word "person" as used herein shall include an individual, company, firm, association, partnership, corporation, trust or other legal entity of any kind whatsoever.

22. If Guarantor is a limited liability company, corporation or other entity, each individual executing this Guaranty on behalf of said limited liability company, corporation or entity represents and warrants that he orshe is duly authorized to execute and deliver this Guaranty on behalf of said limited liability company, corporation or entity; that all meetings, votes, or other corporate action necessary to authorize the execution of this Guaranty by such entity have been taken; and that this Guaranty is binding upon said entity in accordance with its terms. If Guarantor is an entity , Landlord, at its option, may require Guarantor to concurrently, with the execution of this Guaranty, deliver to Landlord a certified copy of a resolution of the managers, officers or directors of such entity authorizing or ratifying the execution of this Guaranty.

**THE UNDERSIGNED HAS READ AND UNDERSTANDS THE TERMS AND CONDITIONS CONTAINED IN THIS GUARANTY INCLUDING, WITHOUT LIMITATION, ALL WAIVERS CONTAINED IN THIS GUARANTY.**

**THIS GUARANTY INCLUDES A WAIVER OF THE RIGHT TO TRIAL BY JURY.**

Executed on this _______ day of ____________, ______.

________________________________
Rodney A. Wadel

Address of Guarantor:

4333 E. Antelope Road
Garden City, Kansas 67846

# <u>EXHIBIT "E"</u>

**Letter of Credit**

**[attached]**